DAN R. HANNA et al., Composing the Copartnership of M. A. HANNA & COMPANY, as Trustees for Creditors of the NEW YORK STATE STEEL COMPANY, Respondents, *v.* THE FLORENCE IRON COMPANY OF WISCONSIN, Appellant.

Contract — receivers — contract by defendant to deliver iron ore — guaranty of performance and payment — refusal by defendant, after insolvency of contracting company and appointment of receivers therefor, to carry out the contract — when order authorizing receivers to carry on business not broad enough to authorize receivers to take over entire contract with defendant and carry on business for more than one year.

1. This action was brought by plaintiffs, claiming to be assignees of the receivers of the New York State Steel Company, to recover damages for an alleged breach of a contract with defendant to deliver iron ore. The steel company made a contract with the defendant which provided for the sale to and acceptance by that company of a large quantity of iron ore during each of five consecutive years commencing with the opening of navigation in the year 1908. Performance of the contract and payment for ore by the steel company were guaranteed by one Kellogg. Intermediate the execution of the contract and the time for delivery of the ore, receivers were appointed for the steel company, one of whom was the above-named guarantor. On application to the United States District Court an order was made authorizing the receivers to sell and dispose of the product agreed to be taken from the defendant " on the best possible terms, not to exceed, however, a commission of seven cents per ton on the sale of said contract during the season or year 1908." It also provided that " the said receivers may in their discretion enter into a contract or contracts with responsible parties to sell, dispose of, transport and finance operations necessary for the sale and disposal of the said ore to be taken by the New York State Steel Company under said contract, *in and for the season or years of 1908*, at a cost of not to exceed ten cents per ton." The defendant, however, refused to carry out the contract.

*Held, first,* that the contract with all obligations of performance on the part of defendant fell unless the receivers were authorized by

the court to approve and adopt the entire contract with defendant and insist on its performance and affirmatively indicated their election to do so;

*Second*, that this order simply authorized them to adopt so much of the contract with defendant as related to delivery of ore during the year 1908 and that it did not touch or permit any assumption of the contract beyond that year, and this was not sufficient for the purposes of this action;

*Third*, if the defendant had delivered ore to the receivers, it would not have been delivering to the original promisee, its successors or assigns and under the terms of the contract and of the guaranty could not have enforced liability against the guarantor;

*Fourth*, that the defendant was not obligated to attempt to give to the contract a new construction or to accommodate the demands of the receivers by introducing into the contract new terms of delivery such as cash payment in order to offset the loss of its surety;

*Fifth*, that the guarantor, who was one of the receivers, was not estopped from raising any question with respect to the deliveries which might be made to the receivers by the fact that when defendant required a letter from him in effect continuing his guaranty to deliveries made to the receivers, the receivers replied, " We cannot compel Mr. Kellogg to write any further letters or give any guarantees," and demanded the performance of the contract.

2. An order was granted by the court authorizing the receivers to make an assignment to plaintiffs of the contract between defendant and the steel company. As a matter of fact it does not appear that any assignment was ever executed by the receivers. Upon examination of the terms of the order and of the agreement to which it refers, *held*, that the latter document contains no words which, upon a consideration of the entire instrument by fair implication, include a transfer of a cause of action for damages for a prior breach of contract; hence, plaintiffs cannot maintain this action for such damages, *Hanna* v. *Florence Iron Co.*, 170 App. Div. 933, reversed.

(Argued December 4, 1917; decided January 8, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 16, 1915, affirming a judgment in favor of plaintiffs entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Alexander B. Siegel* for appellant. The receivers did not assume the Florence iron ore contract. An equity receiver has only such power as is conferred upon him by order of court; he has no power to assume contracts of the debtor defendant which extend beyond a reasonable period of his appointment. (*Breed* v. *Glasgow Inv. Co.*, 92 Fed. Rep. 760; *Stokes* v. *Hoffman House*, 46 App. Div. 120; 167 N. Y. 554; *Standard* v. *Reid & Co.*, 118 App. Div. 304; 195 N. Y. 530; *Vilas* v. *Page*, 106 N. Y. 439; *Sager Mfg. Co.* v. *Smith*, 45 App. Div. 358; *Kent* v. *West*, 33 App. Div. 112; *American Surety Co.* v. *McDermott*, 9 Misc. Rep. 132; *Rogers* v. *Wendell*, 54 Hun, 540; *Roozen* v. *Clonin*, 13 App. Div. 190; *C. D. V. Co.* v. *McNulta*, 153 U. S. 554.) No act of a receiver pretending to assume a contract can act as an assumption of the contract in the absence of authority. (Beach on Receivers [2d ed.], § 270; *K. C. P. Line Co.* v. *Fidelity T. & T. Co.*, 217 Fed. Rep. 187; *Stringham* v. *St. Nicholas Ins. Co.*, 3 Keyes, 280; 37 How. Pr. 365; *Edwards* v. *Dooley*, 120 N. Y. 540; *Joseph* v. *Platt*, 130 App. Div. 478.) A receivership by consent of the defendant in the federal court with a concomitant injunction preventing the defendant debtor from carrying out its contracts, operates as a breach of its contracts, in the absence of their assumption by the receivers; and they cannot be sued upon by or on behalf of the party who committed the breach. (*Simon* v. *Etgen*, 213 N. Y. 589; *Patterson* v. *Meyerhofer*, 204 N. Y. 96; *Maguire* v. *Mortgage Co.*, 203 Fed. Rep. 858; *Pearce* v. *Sutherland*, 164 Fed. Rep. 609; *Hollins* v. *Brierfield C. & I. Co.*, 150 U. S. 371; *Matter of Met. Railway*, 208 U. S. 90; *Penn. Steel Co.* v. *N. Y. C. Ry. Co.*, 198 Fed. Rep. 721; *Central Trust Co.* v. *Chicago Auditorium*, 240 U. S. 581.) Equity receivers (though they have no title) have an independent possession of their own, representing no party to the litigation, but solely the court; they are in no sense assignees of the

debtor defendant whose property they hold. Consequently, the Florence Iron Company could not have held Spencer Kellogg on his guaranty in respect of deliveries which might have been made by it to the receivers. (*Atlantic Trust Co.* v. *Chapman*, 208 U. S. 360; *Penn. Steel Co.* v. *N. Y. C. Ry. Co.*, 198 Fed. Rep. 721; *Central Trust Co.* v. *W. S. L. Co.*, 23 Fed. Rep. 863; *Hamilton Trust Co.* v. *Shevlin*, 156 App. Div. 307; 215 N. Y. 735; *Barnes* v. *Barrow*, 61 N. Y. 39.)   The loss of the guaranty being attributed to the voluntary act of the New York State Steel Company, defendant was not obliged to go on with the mutilated contract. (High on Receivers [4th ed.], § 245; *Hyde* v. *Lynde*, 4 N. Y. 387.)

*Frederick C. Slee* for respondents. The contract in this suit, made by the New York State Steel Company, plaintiffs' assignor, and the defendant, was not terminated, rescinded or abrogated by the insolvency of the steel company and the appointment of receivers. (*N. E. Iron Co.* v. *Gilbert R. R. Co.*, 91 N. Y. 153; *Pardee* v. *Kanady*, 100 N. Y. 121; *Vandegrift* v. *Cowles Eng. Co.*, 161 N. Y. 435; *Phenix Nat. Bank* v. *Waterbury*, 197 N. Y. 161; *Chicago Auditorium Case*, 240 U. S. 581.) Receivers appointed by federal equity courts to conserve corporation assets are mere custodians. Their appointment does not divest the corporation of title. The receivers may elect either to adopt or renounce executory contracts of the corporation. Having affirmed a contract, which they did here, it is thereby continued " as if nothing had taken place." (*Penn. Steel Co.* v. *N. Y. C. Ry. Co.*, 198 Fed. Rep. 721; *Comcl. Pub. Co.* v. *Beckwith*, 167 N. Y. 329.)

HISCOCK, Ch. J.   This action was brought to recover damages for an alleged breach of a contract to deliver iron ore and we think that the judgment recovered therein must be reversed.

In 1907 the New York State Steel Company made contracts with the defendant and two other companies each of which provided for the sale to and acceptance by said steel company of at least 50,000 tons of iron ore during each of five consecutive years commencing with the opening of navigation in the year 1908. Performance of the contract and payment for ore by said Steel Company were guaranteed by one Spencer Kellogg. Intermediate the execution of the contracts and the time for delivery of ore the Steel Company became involved in financial difficulties and in an action in the United States District Court receivers were appointed who forthwith entered upon the discharge of their duties.

Plaintiffs' were the agents of defendant in the execution of its contract with the Steel Company and much correspondence took place between them and the defendant after the appointment of receivers concerning performance of the contract. At first the defendant placed its unwillingness to deliver ore upon the alleged insolvency of the Steel Company. This position, however, was assumed in correspondence between the defendant and its own agents acting somewhat in an advisory capacity and later the defendant placed its refusal to deliver ore upon reasons which were broad enough to lay the basis for its present defense, if that question is at all material, and we shall not regard it necessary to discuss that feature of the controversy any further.

It apparently was clear to the receivers that they would not be able through the direct operation of the Steel Company to use all of the ore which it had contracted to take from the various companies including defendant, and at the same time, as there was then a profit in the prices at which the ore had been contracted for, the receivers naturally and properly were anxious to preserve for the creditors and stockholders of the Steel Company the benefits of the contracts. Under these circumstances

on application to the United States District Court an order was made allowing the receivers to make contracts with other people to take over and market ore contracted to be delivered under the contract with defendant. It is claimed and denied that this order was broad enough to authorize the receivers to assume and adopt the entire contract between the Steel Company and the defendant and that dispute presents the fundamental question in the case.

It is undoubtedly the law as claimed by plaintiffs that mere insolvency of one of the parties to a contract does not relieve the other party from performance thereof and would not excuse the refusal of defendant to carry out its contract. It is equally true, however, in this case that the Steel Company had become disabled from carrying on its contract and that the same with all obligations of performance on the part of the defendant fell unless the receivers were authorized by the court to approve and adopt the contract with defendant and insist upon its performance. It would not have been enough that after their appointments they did not repudiate and refuse to carry out said contract. It was necessary for them to do more than this and under authority of the court affirmatively indicate their election to proceed with the same and hold the other party to the obligations thereof. (*Stokes* v. *Hoffman House of N. Y.*, 46 App. Div. 120; affd., 167 N. Y. 554; *Breed* v. *Glascow Inv. Co.*, 92 Fed. Rep. 760; *Kansas City South. Ry. Co.* v. *Lusk*, 224 Fed. Rep. 704; *Chicago Dep. Vault Co.* v. *McNulta*, 153 U. S. 554; *Peabody Coal Co.* v. *Nixon*, 226 Fed. Rep. 20; *U. S. Trust Co.* v. *Wabash Western Ry. Co.*, 150 U. S. 287, 299.)

In determining whether the order obtained by the receivers did authorize the receivers to take over the entire contract with the defendant it is perfectly proper that we should refer for light to some of the circumstances

and considerations which surrounded the application of the receivers and the action of the court. If this order authorized the receivers to adopt the contract with the defendant it also authorized them to adopt and demand fulfilment of the contracts made with the other ore producing corporations. These contracts in the aggregate involved the delivery of 750,000 tons of ore at a total price of nearly $2,000,000 and extended over a period of five years during which the price of ore, then favorable to the receivers, might materially change and turn what was a benefit into a heavy and disastrous burden. Under such circumstances the interests and rights of everybody required that if it was intended by the order then about to be made to permit the receivers to assume the execution of these contracts and charge the estate which they represented with the possible losses thereof, it should be done in language which fairly indicated that intent and which clothed the receivers with an authority so plain that it could not be successfully questioned if misfortune rather than profit resulted from the transaction.

We do not think that the order does thus permit the receivers to assume these contracts in their entirety, but that on the other hand the permission thereby conferred was limited to the year 1908 and although this was a very wise course for the court to pursue in some respects, it was not sufficient for the purposes of this action.

After many other recitals in the order which need not be repeated we have the one in reference to the contracts with defendant and other corporations that it might be impossible for the receivers to use in the plant of the Steel Company the ore which had been contracted for and that unless said ore could be disposed of said Steel Company might suffer great loss and consequent breach of said contracts. It is then ordered that the receivers be " authorized, empowered and directed, in their discretion, to enter into a contract or contracts with

responsible parties, * * * to sell and dispose of the product agreed to be taken by the New York State Steel Company under the contracts heretofore entered into * * * on the best possible terms, not to exceed, however, a commission of seven cents per ton on the sale of said contract, during the season or year of 1908; and they are further authorized, empowered and directed to enter into a contract or contracts with responsible agents or brokers, in their discretion, to obtain advances of moneys necessary for the transportation charges and other expenses of handling, shipping and marketing the said ore, by pledging the said ore to the said party or parties with whom the said Receivers may make a contract or contracts, at a charge or cost of not to exceed three cents per ton, or that the said Receivers may, in their discretion, enter into a contract or contracts with responsible parties to sell, dispose of, transport and finance operations necessary for the sale and disposal of the said ore to be taken by the New York State Steel Company under said contracts, in and for the season or years of 1908, at a cost of not to exceed ten cents per ton."

When we analyze these provisions of the order we see at once that there is not any general authority to the receivers to assume the contracts, followed by subsidiary clauses permitting them to dispose of the ore to be received under the contracts, through the agency of brokers. The only authority to assume the contracts is found in what naturally would have been such subsidiary provisions, namely, an authority to make contracts with brokers to dispose of ore and, therefore, the assumption of the contract is governed and limited by the extent of this authorization to deal with brokers. It seems to us that the provision giving power to the receivers to make a contract with brokers to dispose of ore " on the best possible terms, not to exceed, how-

ever, a commission of seven cents per ton on the sale of said contract, during the season or year of 1908 " was one which simply authorized them to adopt so much of the contract with defendant as related to delivery of ore during the year 1908 and that it did not touch or permit any assumption of the contract beyond that year. It is argued that the limitation to the year of 1908 related only to the commissions which the receivers were authorized to pay and did not in any manner limit or affect the assumption of the contract by the receivers for the other years. We do not think that this is a fair or reasonable construction of the order even if based on the particular clause to which we have referred. But if this clause by itself is ambiguous we think such ambiguity is eliminated by a subsequent provision. In addition to authorizing the payment of the commission for the sale of ore the receivers were, as stated, also authorized to pay a commission, for financing the expense of handling, shipping and marketing ore, of three cents per ton. These two commissions amounted in the aggregate to ten cents per ton and thus far were authorized to be paid to separate parties. Then the authority thus given to the receivers was outlined in another and alternative clause which permitted them to make a contract with one and the same person both for selling and financing the sale of the ore and this clause it seems to us indicates clearly that all of the authority intended to be given was limited to the year 1908. It provides that in lieu of making contracts with two parties " the said receivers may in their discretion enter into a contract or contracts with responsible parties to sell, dispose of, transport and finance operations necessary for the sale and disposal of the said ore to be taken by the New York State Steel Company under said contract, *in and for the season or years of 1908*, at a cost of not to exceed ten cents per ton." We do not

see how any language much more plainly could indicate that the receivers were limited to incurring expenses for the year 1908 and we repeat, the only authority which was conferred upon them by this order was that to be found in permission to make arrangements to sell and market ore to be received under the contract. If that permission was limited to the year 1908, the authority to assume the contract was limited to 1908. If this last provision was limited to the year 1908 manifestly it must have been intended to limit the preceding clauses to the same year.

The next question which arises is the one whether the defendant was compelled to deliver ore under its contract to the receivers even though they were authorized to and did assume the contract. This question is precipitated by the fact already referred to that the execution and faithful performance by the New York State Steel Company of the contract was guaranteed by Mr. Kellogg who was subsequently appointed one of the receivers. If the defendant by deliveries of ore to the receivers would have lost the benefit of this guaranty of course it would not be required to make them. We think that this would have been the result and that for this reason defendant was excused from delivery.

The contract made by defendant was for the benefit of and enforcible by the Steel Company "its successors and assigns." The receivers were mere custodians subject to the orders of the court. They were appointed for the purpose of conserving the rights of everybody interested in the property of the Steel Company. It is conceded by the respondents that they were not "assigns" of the Steel Company and it is not claimed as it could not well be that they were "successors" of the latter. That latter term as used in the contract does not describe any such transference from a corporation of

its rights, property and privileges as was effected by the appointment of the receivers. It means, ordinarily in the case of a corporation, another corporation which by a process of amalgamation, consolidation or duly authorized legal succession has become invested with the rights and has assumed the burdens of the first corporation. Thus it would have happened that if the defendant had delivered ore to the receivers it would not have been delivering to the original promisee, its successors or assigns and under the terms of the contract and of the guaranty we fail to see how it could have enforced liability against the guarantor.

It is, however, suggested that it would have or might have been relieved from difficulty in this respect in either one of two ways. It is said in the first place that if delivering to the receivers it might have insisted upon cash payment and thereby have avoided the necessity of any resort to the responsibility of its guarantor. While *Pardee* v. *Kanady* (100 N. Y. 121) sustains the proposition that a vendor under such a contract as this might demand cash instead of submitting to a term of credit we do not think that that proposition aids plaintiff here. The receivers demanded delivery of ore under the contract which extended terms of credit and without any offer to pay cash on delivery. We do not think that the defendant was obligated to attempt to give to the contract a new construction or to accommodate the demands of the receivers by introducing into the contract new terms of delivery in order to offset the loss of its surety. It had a right to stand on its contract. It was not bound to give up its guarantor and find some other substitute for him which might prevent loss.

It is in the next place urged that the guarantor had estopped himself from raising any question in respect of deliveries which might be made to the receivers. The facts upon which this claim is based are brief. In the

course of its correspondence with its agents, Hanna and Company, the defendant requested a copy of the order under which the receivers claimed they were authorized to demand delivery of ore and also called attention to the guaranty by Mr. Kellogg and said "before making delivery we will reqnire a letter from him stating that his guaranty applies as well to deliveries made to the receivers under order of the court as to deliveries made under the contract to the New York State Steel Company itself." In answer to this a letter was received signed in the name of the Steel Company by Mr. Kellogg and one of the other receivers stating "your letter requires two things — a letter from Mr. Spencer Kellogg, and a copy of the order of the Court. A copy of the order of the Court we will be glad to furnish you. We cannot compel Mr. Kellogg to write any further letters or give any guarantees. We do, however, by this letter, demand from you the performance of the contract."

We fail to discover in these facts anything which would have estopped Mr. Kellogg from denying the legality under his guaranty of deliveries to the receivers. He was acting in a dual capacity. As one of the receivers, properly enough, he was trying to secure for the Steel Company from the defendant under its contract what he thought was for the benefit of the former. If this had been all of the transaction it is possible that some elements of estoppel might have been present. But it was not all. He occupied the other position of guarantor and when the defendant naturally enough under the circumstances wanted further assurances from him as such covering deliveries to the receivers, he declined to give the same. He in effect said to the defendant that while as receiver he intended to make it deliver ore if he could, as guarantor he proposed to stand on his rights and be bound by the terms of his

contract as it had been written.    This created no estoppel.
An estoppel arises when one party has so induced another
to act in reliance upon his conduct or words that he
will not be permitted to change his attitude even though
it be different than that which he might originally have
assumed.    Mr. Kellogg did nothing of this kind.    As
receiver he insisted that defendant was bound to deliver
ore to him and his associates, but he qualified this
insistence so far as his guaranty was concerned by notice
that he would stand on his contract as written.    There
was nothing misleading about this.    The effect of it all
was that the defendant was relegated to its contracts
and left to determine what they meant.    The principles
of estoppel as applied to such a case as this are reason-
ably well defined and plain and we ought not to sub-
stitute for them some hazy and indefinite notions whereby
in the supposed interests of justice a convenient theory
of estoppel is predicated upon facts which do not fairly
sustain it.

The final question is the one whether assuming that
the defendant committed a breach of its contract a right
of action to recover damages therefor was ever assigned
to these plaintiffs and again we feel compelled to answer
the question like the others unfavorably to the plaintiffs.

Defendant's breach of contract, if any, was committed
August 3, 1908.    October twelfth of that year an order
was obtained by the receivers authorizing them to make
an assignment to the plaintiffs.    The long recitals in
this order, so far as material at all, only refer to the con-
tracts which had been made with the defendant and
other corporations for the delivery of ore.    There is
no recital of the fact that there had been any breach
by defendant of its contract as now claimed.    The order
provides that the receivers may assign to plaintiffs as
trustee the contract between the defendant and the New
York Steel Company, such assignment to be made " pur-

suant to the terms and provisions of the agreement in writing dated August 28th, 1908, between the New York State Steel Company * * * and M. A. Hanna & Company * * *. and various * * * creditors and material men." As a matter of fact it does not appear that any assignment was ever executed by the receivers, but it has been assumed that the order permitting such an one and the assignment made by the Steel Company to plaintiffs as trustee would be effective, if otherwise sufficient, to transfer a right of action for defendant's alleged breach. By the terms of the order we are referred to such latter agreement or assignment by the Steel Company for the purpose of determining the question now being considered.

In approaching the interpretation of the instrument and. as aiding somewhat in its construction we ought again to bear in mind certain surrounding circumstances. The first one thus to be noticed is that if a right of action existed in behalf of the receivers for a breach by defendant of its contract, there was no object whatever in assigning it to plaintiffs for enforcement. The enforcement of such a right involved at most simply an action and this the receivers were as fully qualified and able to bring as any one.

The second consideration is that the subject which seems to have troubled the receivers at all times was the disposition to be made of the large amount of ore which would be put on them if they adopted these contracts and which they evidently feared they could not handle and this danger they were anxious to avoid by arranging with some one else to take the ore off their hands and leave them the profit which existed between the contract and going prices for ore.

When we read the contract of August 28th, 1908, which is relied on as an assignment, it seems very clear that it was intended to meet the second consideration

mentioned and that there was no thought of including within its terms an assignment of any right of action for an existing breach of contract. There are not found within its provisions any specific words which include such a transfer. Equally there are no words which upon a consideration of the entire instrument by fair implication indicate an intent to make such an one. The entire purpose of the instrument indicated repeatedly by various phrases and provisions was to transfer to these plaintiffs the right and responsibility of disposing of the ore which might thereafter be delivered under the contracts and which the receivers feared they could not handle. The agreement after reference to the various contracts recites that " there is a *prospective profit* in the said contracts for the said ore " and that the Steel Company is willing to assign such contracts " to said trustee (plaintiffs) for the purpose of devoting the *prospective profits* to be derived therefrom to the liquidation " of indebtedness and that, therefore, the Steel Company does assign " all of its right, title and interest in, to and under the aforesaid contracts " and that " the said trustee agrees to accept an assignment or assignments of the said contract " and " *to sell and dispose* of the ores to be delivered under the said contract " and to advance moneys and so forth for the purpose of handling, shipping and marketing the ores and the trustee is to " retain the net proceeds derived from the sale of said ores " until a certain amount shall have been accumulated as an indemnity fund and as often as said trustee has in its possession " net proceeds derived from the sale of said ores " aggregating a certain sum it is to make an accounting therefor; also that the Steel Company in case it needs the same is to have the privilege of purchasing from the trustee ore at a certain price and that all sales of the said ore are to be subject to the approval of the trustee and the representative of the Steel Company.

And finally as very significant it is provided that after certain payments shall have been made by the trustee including claims of creditors " the overplus if any there be * * * arising from the *sale of the ore* to be delivered under the aforesaid contract " shall be paid to the Steel Company. Certainly, if it had been intended that plaintiffs as trustee should collect the sum of $22,000 damages for a breach of contract the provision for the application of the moneys which might come in their hands would not have omitted all reference to such damages. It seems to us that the proposition that such an instrument prepared under the circumstances we have adverted to was intended to transfer to the plaintiffs the present cause of action can scarcely be brought within the limits of reasonable debate.

In accordance with these views we think that the judgment must be reversed, and, since the facts cannot be changed on another trial, the complaint should be dismissed, with costs to the defendant in all courts.

CHASE, COLLIN, HOGAN and MCLAUGHLIN, JJ., concur; POUND and CRANE, JJ., dissent.

Judgment reversed, etc.