BECKER, Judge.
This is an appeal by Hideko Sato and Frank Hara from a judgment rendered against them and in favor of Pontchartrain State Bank on March 29, 1988. The judgment resulted from a trial on the merits which was held on March 22, 1988 in the Civil District Court in the Parish of Orleans.
The judgment against the appellants arises from a suit on two promissory notes; one dated May 21, 1985 in the sum of $25,000.00 dollars and one dated March 1, 1985 in the sum of $550,000.00 dollars. The notes were executed by Takee Outee Management Corporation in favor of Colonial Bank and were solidarily guaranteed by the appellants as follows: Hideko Sato guaranteed to Colonial Bank for the payment due on the $25,000.00 note, Sato and Hara guaranteed the payments due on the $550,000.00 note, and Hara executed a separate “continuing guarantee” securing the $550,000.00 note.
During the pendency of these proceedings, Colonial Bank went into liquidation and a conservator was appointed. Through a joint motion filed by the conservator and the FDIC, the FDIC. was appointed receiver. The FDIC was authorized, as receiver, to transfer unto Pontchartrain State Bank certain assets of Colonial Bank. The court approved the transfer to Pontchartrain State Bank of all rights, title, and interests in and to all book and nonbook assets of the Colonial Bank.
Pontchartrain State Bank was then substituted as plaintiff in this suit against the appellants. A trial on the merits was held on March 22, 1988 and judgment was rendered against the appellants, from which they now appeal.
The appellants argue that Pontchartrain State Bank may not benefit from the guarantees given to Colonial Bank because Pontchartrain is not a “successor, assign, transferee or endorser” of Colonial Bank.
The following language is contained in the notes at issue:
The undersigned hereby jointly, se-veraly and in solido unconditionally guarantee to Colonial Bank, its successors, assigns, transferees and endorsers, the punctual payment of the note on the reverse hereof and of each extension and renewal thereof, at maturity or when the same shall otherwise become due in accordance with the provisions thereof, and having taken cognizance of all the terms, conditions, waivers and agreements of the said note, hereby agree that such terms, conditions, waivers and agreements shall be binding upon the undersigned, and each of them, the undersigned hereby waiving presentment of payment, demand, protest and notice of protest and nonpayment, and also all pleas of division and discussion, and agreeing that the liability of the undersigned is and shall be joint, several and in solido with each other and with the maker or makers of this said note.
And the following language is contained in the continuing guarantee at issue:
In consideration of Colonial Bank at my request giving or extending terms of credit to Takee Outee Management Corp. hereinafter called “debtor,” I hereby give this continuing guarantee to said Colonial Bank, New Orleans, Louisiana, hereafter called Bank, its transferees or assigns, for the payment in full together with all interest, attorney’s fees, other fees, and charges of whatsoever nature and kind, any indebtedness, direct or contingent, whether secured or unsecured, of said debtor to said Bank up to the amount of $550,000.00 whether due, or to *759 become due and whether now existing or here and after arising....
The appellants contend that Pontchartrain State Bank cannot be considered Colonial’s “successor” because by the court order of January 14,1988 at 2:00 P.M. Colonial Bank was ordered to “close” and was put into liquidation. They argue, the mere fact that the FDIC was subsequently appointed as receiver, does not make the FDIC the successor to Colonial; there simply was no successor to Colonial.
Appellants further argue that Pontchartrain is not Colonial’s “assign or transferee” because the two notes and guarantee were never assigned or transferred to anyone. Even though title to Colonial’s assets became vested in the conservator by operation of law in the liquidation, there never was a formal “assignment or transfer” of the notes and guarantee by Colonial to the conservator. Thus, while the FDIC was an assign or transferee of the conservator, they were not the assign or transferee of Colonial. In addition, at the end of this transaction, the FDIC assigned and transferred Colonial’s assets to Pontchartrain. Pontchartrain, therefore, is the FDIC’s assigns and transferee, but not Colonial’s. Appellants cite Citizens Bank and Trust Company v. Barthet, 177 La. 652, 148 So. 906 (1933), Hanna v. Florence Iron Company of Wisconsin, 222 N.Y. 290, 118 N.E. 629 (1918) and La.C.C. art. 3044 to support their proposition that the guarantee on a contract of suretyship must be strictly interpreted. Therefore, the appellant should be found to have given a special guarantee or suretyship only in favor of Colonial Bank and its successors, assigns or transferees and endorsers. The appellants conclude that the special guarantee in this case did not contemplate Pontchartrain State Bank and therefore Pontchartrain may not benefit from it.
Try as they might, the appellants can not paint a grapefruit red and call it an apple. The promissory notes at issue are negotionable instruments and were endorsed with the signatures of the appellants as guarantors. The continuing guaranty also contains the signature of the appellant Hara.
The guaranty provisions of both the note and the continuing guaranty contain specific language indicating a clear intent that the endorsement and guaranties would follow the notes into the hands of Colonial Bank or any of its successors, assigns, transferees and endorsers. Pontchartrain State Bank falls clearly within this category as a subsequent transferee of the notes and as a successor in interest to the rights of Colonial Bank. The guarantees on the notes and the continuing guaranty do not contain any restrictive language or reflect any restrictive intent to limit their benefits to only Colonial Bank. They cannot be considered as special guarantees in favor only of a particular party. To hold that Pontchartrain State Bank is not a transferee or successor to Colonial Bank based upon the fact that the closing and liquidation of Colonial Bank prevented the ability to transfer or assign the guarantees on the notes would be contrary to the laws of negotiable instrument and suretyship. Accordingly, we find that the trial court did not err in granting the judgment in favor of Pontchartrain State Bank.
The appellants also contend that the district court erred in awarding 25% attorneys fees as was called for by the terms of the promissory notes. They argue even though the fees were set by the provision of-the notes, a 25% attorney’s fee cannot be awarded unless the attorney proves that he performed sufficient work to earn that amount. The appellants cite no authority for their proposition, however we note that they appear to rely on Leenerts Farms Inc. v. Rogers, 421 So.2d 216 (La.1982) for the proposition that attorney fees must be reasonable and cannot be set by contractual provisions which may provide unreasonable fees.
In 1985 the legislature attempted to legislatively overrule the Louisiana Supreme Court decision of Leenerts Farms Inc. v. Rogers, 421 So.2d 216 (La.1982) by amending Civil Code Art 1935 (now Article 2000) to read as follows:
When the object of the performance is a sum of money, damages for delay in performance are measured by the inter *760 est on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by Article 2924. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more. If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee’s attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well.
However, the Louisiana Supreme Court in Central Progressive Bank v. Bradley et al, 502 So.2d 1017 (La.1987) subsequently ruled that:
La. Const, art. 5, Sec. 5(B) provides that the supreme court has exclusive original jurisdiction of disciplinary proceedings against a member of the bar. The supreme court has a duty to assert that authority to regulate the practice of law. We held in Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982), that the prohibition against a lawyer accepting a “clearly excessive fee” found in Disciplinary Rule 2-106 of the Code of Professional Responsibility, cannot be abrogated by a provision in a note fixing the amount of attorney fees as a percentage of the amount to be collected. This prohibition likewise cannot be abrogated by a law fixing the amount of attorney fefes as a percentage of the amount to be collected. City of Baton Rouge v. Stauffer Chemical Company, 500 So.2d 397 (La.1987). See also Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979). Since art. 2000 attempts to regulate attorney fees, it will not be enforced when the attorney fees fixed by the parties are excessive and unreasonable. Notwithstanding art. 2000, the courts may inquire into the reasonableness of such a fee.
The Fourth Circuit in Gibson v. Burns, 505 So.2d 66 (La.App. 4th Cir.1987) has also followed this rule, holding that the courts may inquire as to the reasonableness of a fee but should not interfere with a contract unless there is a “clearly excessive fee” involved.
In the instant case it appears to us that an attorney fee of $143,750.00 for the collection of two promissory notes is “clearly excessive.” Therefore, we will remand this issue to the trial court to determine what a reasonable attorney fee should be under the circumstances.
AFFIRMED IN PART; REMANDED IN PART.