## Quinn Emanuel Urquhart & Sullivan, LLP v Desktop Metal, Inc.

2025 NY Slip Op 31402(U)

April 21, 2025

Supreme Court, New York County

Docket Number: Index No. 652274/2025

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 49M

------------------------------------------------------------------------X

| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | **INDEX NO.** 652274/2025 |
| Petitioner, | |
| | **MOTION DATE** 04/11/2025 |
| - v - | |
| DESKTOP METAL, INC., | **MOTION SEQ. NO.** MS 001 |
| Respondent. | **DECISION + ORDER ON MOTION** |

------------------------------------------------------------------------X

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 13, 36, 37, 38, 39

were read on this motion to/for _____ ORDER OF ATTACHMENT _____.

    In this special proceeding, petitioner law firm Quinn Emanuel Urquhart & Sullivan LLP (Quinn) moves for an *ex parte* order of attachment in aid of a pending arbitration against its former client, respondent Desktop Metal, Inc. (Desktop), pursuant to CPLR 7502(c). Desktop opposes the petition. For the reasons below, Quinn's petition is denied.

## Background

    The court assumes familiarity with the underlying facts, which are recounted in both Quinn's petition and in the related Delaware case *Desktop Metal, Inc. v Nano Dimension Ltd.* (2024-1303-KSJM, 2025 WL 904521, at *1 [Del Ch Mar. 24, 2025]).

    As relevant here, respondent Desktop and non-party Nano Dimension Limited (Nano) entered a merger agreement by which Nani would acquire Deskstop (NYSCEF # 1, Petition, ¶ 10). Desktop and Nano signed the deal in July 2024, but by December 2024—only a few months before closing—Nano was taken over by an "activist investor" who attempted to "tank [the] deal" (*id.* ¶ 12). On December 16, 2024, Desktop sued Nano in Delaware Chancery Court to complete the merger and hired petitioner Quinn as its counsel (*id.; see Desktop Metal*, 2025 WL 904521, *19 [date suit was filed]).

    Quinn allegedly gave Desktop a "generous deal" in the Engagement Letter between them (Petition ¶ 15). Quinn gave Desktop "an upfront 50% reduction on its hourly billing rates" and Desktop promised that it would "pay 120% of [Quinn's]

**652274/2025  QUINN EMMANUEL URQUHART & SULLIVAN, LLP vs. DESKTOP METAL, INC.**
**Motion No.  001**

Page 1 of 5

1 of 5

hourly billing rates" if they won the litigation (*id.*). Desktop promised to pay its bills "within thirty days of receipt" (NYSCEF # 5, Engagement Letter at 5). The parties also agreed to go to arbitration if they had any dispute over the Engagement Letter (Petition ¶ 17).

Quinn got to work, and in just two-and-a-half months managed to prepare for and win a two-day trial with a record comprised of "2,620 trial exhibits, live testimony from seven fact and four expert witnesses, deposition testimony from eleven fact and nine expert witnesses, and 47 stipulations of fact" (*Desktop Metal*, 2025 WL 904521, at *2). The Chancery Court found among other things that although Desktop was "extremely cash strapped," it did not violate the "No Bankruptcy Provision" of the merger agreement (Petition ¶ 19).

On March 31, 2025, Quinn emailed invoices for January, February, and March of 2025 to Desktop (NYSCEF # 37, Email Invoice from Quinn dated March 31, 2025). Per the Engagement Letter, the bills were therefore due thirty days later on April 30. However, on April 3—just three days after sending the bill— Quinn sent a Desktop a "formal demand" letter asking for confirmation confirm by 5 pm on April 4 that Quinn's "legal fees will be paid in full," or else Quinn would "take legal action" (Petition ¶ 16; NYSCEF # 6, Quinn Letter dated April 3, 2025). Quinn's worries were driven by evidence from the litigation indicating Nano purchased Desktop metal with an "intention to divest [Desktop's] assets" (Petition ¶ 16). Moreover, Quinn's bill to Desktop was over $29 million (*id.* ¶ 15).

Desktop did not answer to Quinn's satisfaction on April 4, and so on April 10, 2025, Quinn initiated arbitration as contemplated in the Engagement Letter (*id.* ¶ 17). Just one day later, on April 11, Quinn brought this special proceeding via petition pursuant to CPLR 7502(c) seeking an *ex parte* order of attachment of roughly $34 million of Desktop's assets and an undertaking of only $50,000 (*id.* ¶¶ 25-26). Specifically, Quinn requests the court attach:

> "[Desktop's] manufacturing facilities and equipment up to the value of $34 million, including but not limited to its manufacturing machinery, equipment, component parts, spare parts, systems, utilities, tools, raw materials, inventory, supplies, furniture, computers, vehicles, other tangible property, or any interest in the buildings or real estate on which the facilities are located at the locations referenced in **Appendix A** of [Quinn's] Memorandum of Law . . . as well as any other tangible or intangible rights that [Desktop] may own, including patents, patent licenses, and other intellectual property"

(*id.* ¶ 25 [emphasis added]). Appendix A to Quinn's brief is a list of thirteen of Desktop's manufacturing facilities, nine of which are in other states (Massachusetts, Michigan, Pennsylvania, Texas, and New Jersey) and the

**652274/2025   QUINN EMMANUEL URQUHART & SULLIVAN, LLP vs. DESKTOP METAL, INC.**   **Page 2 of 5**
Motion No.  001

2 of 5

[* 2]

remaining four of which are in other countries (Germany and Taiwan) (NYSCEF # 3, Quinn MOL at 18-19).

Desktop appeared and opposed via letters and affirmations on April 11 and 14, 2025 (NYSCEF #s 13, 36-39). The court held a hearing on the petition on April 15. This decision is what follows.

## Discussion

"Attachment is a harsh remedy and is construed narrowly in favor of the party against whom the remedy is invoked" (*VisionChina Media Inc. v S'holder Representative Servs., LLC*, 109 AD3d 49, 59 [1st Dept 2013] [internal citations omitted]). A plaintiff or petitioner seeking an order of attachment "must show [1] the probability of its success on the merits of its cause of action, [2] that one or more grounds provided for in CPLR 6201 exist, and [3] that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff" (*Reed Smith LLP v LEED HR, LLC*, 156 AD3d 420, 420 [1st Dept 2017]) and [4] demonstrate an "identifiable risk that the defendant will not be able to satisfy the judgment" (*VisionChina*, 109 AD3d at 60). In lieu of grounds under CPLR 6201, CPLR 7502(c) permits courts to issue an order of attachment in connection with an arbitration proceeding "upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief" (*see Founders Ins. Co. Ltd. v Everest Nat. Ins. Co.*, 41 AD3d 350, 351 [1st Dept 2007] [applying likelihood of success prong to a petition under CPLR 7502]).

As an initial matter, Quinn's request for attachment must fail because it is unclear that there is any property in New York to attach. "In order to be subject to attachment, property must be within the court's jurisdiction" (*Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts, Inc.*, 269 AD2d 101, 101 [1st Dept 2000]). "Clearly, it would violate the sovereignty of another state if a New York sheriff tried to attach property in another state" (*Gryphon Dom. VI, LLC v APP Intern. Fin. Co., B.V.*, 41 AD3d 25, 31 [1st Dept 2007]).

Here, Quinn asks to attach "Desktop metal's manufacturing facilities and equipment, including but not limited to . . . tangible property, or any interest in the buildings or real estate on which facilities are located at the locations referenced in Appendix A, as well as any other tangible or intangible rights that Desktop metal may own" (NYSCEF # 3 at 17). All thirteen facilities in Appendix A are located outside of New York State (*see id.* at 18-19), so to the extent Quinn asks to attach those facilities or any property located there, the request must be denied. Moreover, Quinn does not specify any other property that is or may be in New York. The court cannot attach things that are not here to be attached.

Even if there were property in New York, Quinn's petition would be denied because it fails on the first two prongs of attachment. Specifically, Quinn has failed

652274/2025   QUINN EMMANUEL URQUHART & SULLIVAN, LLP vs. DESKTOP METAL, INC.      Page 3 of 5
Motion No. 001

3 of 5

to show that Desktop breached the Engagement Letter. According to the Agreement, "[a]ll bills shall be paid within thirty days of receipt" (NYSCEF # 5 at 5). Quinn did not send invoices to Desktop until March 31, 2025 (NYSCEF # 37), meaning Desktop has until April 30 to pay. Until then, there has been no breach, making the case unripe—no cause of action or likelihood of success.

Quinn replied at oral argument that it nevertheless showed a cause of action and likelihood of success because Desktop anticipatorily repudiated the Agreement by failing to respond to Quinn's request for "adequate assurance" (*see* NYSCEF # 6 at 1, 3 ["Absent confirmation by 5 pm ET on April 3, 2024 that our legal fees will be paid in full, we will take legal action against Desktop Metal and Nano"]). The gist of Quinn's argument is that it is entitled under *Norcon Power Partners, L.P. v Niagara Mohawk Power Corp.* (92 NY2d 458, 468 [1998]) to seek "adequate assurance" that Desktop would pay its legal bills. Quinn asked for that assurance via letter on April 3, 2025, and Desktop did not unequivocally promise to make payments. Quinn argues, for the first time, that according to *Norcon*, this constitutes anticipatory repudiation such that Quinn has a cause of action.

Quinn's choice to raise anticipatory repudiation for the first time at oral argument is questionable at best. It is no surprise that Desktop's response is that Quinn's claim is unripe given that the bills are not due until April 30. Indeed, one subheading of Quinn's petition is "Desktop Metal's *Repudiation* Of Its Obligation to Pay Quinn Emanuel" (NYSCEF # 1 between ¶¶ 14-15).

In any event, Quinn's petition would be denied even if the court were to overlook the last minute argument without affording Desktop an opportunity to address the adequate assurance argument. As explained in *Norcon*, the doctrine of adequate assurance stems from UCC § 2-609, which "allows a party to a contract for the sale of goods to demand assurance of future performance from the other party when reasonable grounds for insecurity exists" (*Norcon*, 92 NY2d at 464). "When adequate assurance is not forthcoming, repudiation is deemed confirmed, and the nonbreaching party is allowed to take reasonable actions as though a repudiation had occurred" (*id.*). Several states have imported the doctrine of adequate assurance to "common-law categories of contract law" because it has been found so effective (*id.* at 465).

New York, however, has *not* adopted adequate assurance wholesale. The Court of Appeals in *Norcon* cautioned courts to "proceed warily in extending this UCC doctrine to the common law of this State" (*Bank of New York v River Terrace Assoc., LLC,* 23 AD3d 308, 309 [1st Dept 2005], citing *Norcon*, 92 NY2d at 468). After *Norcon*, there are three situations in which a party can ask for adequate assurance: (1) where the contract is governed by the UCC; (2) where one party is insolvent (*Norcon*, 92 NY2d at 466, citing *Hanna v Florence Iron Co*, 222 NY 290 [1918]); and (3) where the contract at issue is similar to the type of contract at issue in *Norcon*.

As most relevant here, the First Department ruled that *Norcon* stands for the proposition that the doctrine of adequate assurance should be imported only to cases "analogous to a sales contract" (*see River Terrace*, 23 AD3d at 309 [declining to extend doctrine where "long-term construction loan agreement" was not "analogous to a sales contract"]; *see also Ricatto v M3 Innovations Unlimited, Inc.*, 18 CIV. 8404 (KPF), 2020 WL 2306480, at *4 [SDNY May 8, 2020] [declining to extend doctrine to a "garden variety loan agreement" because it is not like a contract for sale of goods]; *Peng v Willets Point Asphalt Corp.*, 81 AD3d 618, 618 [2d Dept 2011] [rejecting application of adequate assurance to contract for sale of real estate]). Clearly the UCC does not apply to the Engagement Letter. And the Engagement Letter is not similar to a contract for the sale of goods in *Norcon*.

Quinn's main response is the case *Mishcon de Reya New York LLP v Grail Semiconductor, Inc.*, which applied the doctrine of adequate assurance to an attorney engagement agreement (11 CIV. 04971 RJH, 2011 WL 6957595, at *6 [SDNY Dec. 28, 2011]). However, there was no dispute that the client in *Mishcon* was insolvent, and therefore the case did not involve an application of *Norcon* (*see id.*). This court is not aware of any cases applying *Norcon* and the doctrine of adequate assurance to an attorney engagement agreement where the defendant is solvent.

Whether Desktop is solvent is unclear given the Delaware Chancery Court's finding that Desktop was not literally in bankruptcy but was "extremely cash strapped" (*see Desktop Metal*, 2025 WL 904521, at *36). Nonetheless, this court defers to the Chancery Court's finding that Desktop is not insolvent.

In short, Quinn's petition fails because it attempts to attach only out-of-state property and because the claim is unripe. The court has considered the parties' remaining contentions and found them unavailing. The petition is therefore denied.

## Conclusion

It is hereby

ORDERED that petitioner Quinn Emanuel Urquhart & Sullivan LLP's petition for an *ex parte* order of attachment in aid of arbitration is denied.

| 4/21/2025 | | |
|---|---|---|
| **DATE** | | MARGARET A. CHAN, J.S.C. |

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

652274/2025   QUINN EMMANUEL URQUHART & SULLIVAN, LLP vs. DESKTOP METAL, INC.   Page 5 of 5
Motion No. 001

5 of 5