OPINION OF THE COURT
Robert F. Doran, J.
The petitioner is the designee of the court-appointed receiver of the Kings Harbor Health Care Center (hereinafter Kings Harbor). Pursuant to CPLR 7503 (subd [b]), the petitioner seeks to stay an arbitration proceeding initiated by the respondents, the president and secretary-treasurer of Local 144, Hotel, Hospital, Nursing Home & Allied *170 Services Union, SEIU, AFL-CIO (hereinafter Local 144) against Kings Harbor. Local 144 has cross-moved for leave to arbitrate.
Kings Harbor is a residential health care facility which, until February 13, 1979, was maintained and operated by individuals who were licensed by the State of New York. On that day, this court vacated a stay of an order revoking the operating certificates of the facility, granted petitions of the State to place Kings Harbor in involuntary receivership and appointed the State Commissioner of Health (hereinafter receiver) as the receiver of the facility pursuant to subdivision 2 of section 2810 of the Public Health Law.
The order appointing the receiver specified that the receiver “shall take all necessary and practical steps to eliminate serious operating deficiencies and to attempt to maintain and/or regain medicaid reimbursement from the federal government so that he can maintain the patients in both facilities”.
On February 14, 1979, the petitioner, Robert Greenblatt, was designated to act on behalf of the receiver in the conduct of the receivership of Kings Harbor. Since on or about February 14, 1979, the petitioner has been operating Kings Harbor on behalf of the receiver, the patients and the public at large.
By order dated November 5, 1979, this court granted leave to the receiver to commence such actions or proceedings in connection with labor relations matters (such as the instant proceeding) where such actions or proceedings were deemed by the receiver as necessary and proper for the conduct of the receivership.
The prereceivership licensed operators and Local 144 were parties to a collective bargaining agreement (hereinafter agreement) which became effective on April 1, 1978. The termination date of the agreement is March 31, 1981. The agreement covers service employees, licensed practical nurses and registered nurses employed by Kings Harbor. The agreement provides for a grievance procedure which culminates in binding arbitration for the resolution of disputes.
*171 On February 14, 1979, shortly after the commencement of the receivership, counsel for the receiver informed Local 144 by letter that the receiver did not consider himself bound by the pre-existing agreement. The receiver has consistently taken the position that he is not legally obligated to arbitrate disputes which arose from actions taken prior to February 13, 1979 by the prereceivership licensed operators. The receiver has never consented or agreed to any collective bargaining agreement or valid arbitration agreement with Local 144 with respect to disputes which arose during the prereceivership operations of Kings Harbor. The receiver has, however, agreed to be bound by the arbitration provision of the agreement as to disputes arising no earlier than the effective date of the receivership, on or about February 13, 1979. The petitioner’s contention is that there is no arbitration agreement binding upon the receiver as to disputes arising under the agreement prior to the receivership.
On July 16, 1979, an arbitrator informed the receiver by letter that he had scheduled November 12, 13, 14 and 15, 1979 as hearing dates to conduct an arbitration proceeding with respect to several disputes which had arisen prior to February 13, 1979 as a result of actions taken by the prereceivership licensed operators.
This was the first notice that the receiver had alleging the existence of such disputes. Local 144 never served the receiver with any notice of arbitration or demand for arbitration with respect to these matters. Similarly, the receiver never received a notice pursuant to CPLR 7503 (subd [c]) stating that if he did not move to stay arbitration within 20 days, he would be precluded from objecting that a valid arbitration agreement had not been made. Local 144’s papers do not contradict the foregoing facts but merely allege that notices of intent to arbitrate were served between two years and three months before the receivership commenced at Kings Harbor. Since the petitioner was not aware of these notices at any time relevant hereto, he argues that they are not binding upon him.
On November 1, 1979, counsel for Local 144 sent a letter to the arbitrator requesting him to hear the disputes out *172 lined in his notice of hearing in accordance with his schedule. Thereafter, counsel for the receiver informed counsel for Local 144 that the receiver had never agreed to arbitrate disputes which arose as a result of the actions taken by the prereceivership licensed operators prior to February 13, 1979. Despite the fact that the prereceivership operators are subject to arbitration proceedings and that it was their actions which gave rise to these arbitrations, Local 144 has not sought to enforce its arbitration agreement against them.
This court concludes firstly that State law, not Federal law, is applicable to the determination of whether a valid agreement to arbitrate prereceivership disputes exists between the receiver and Local 144.
An action in a State court to stay an arbitration proceeding arising under section 301 of the National Labor Relations Act, as amended (hereinafter Act) (US Code, tit 29, § 185), must be decided under Federal labor law (Teamsters Local v Lucas Flour Co., 369 US 95). In order for section 301 to be applicable, one of the parties involved in the proceeding must be an employer within the meaning of subdivision (2) of section 2 of the Act (US Code, tit 29, § 152, subd [2]; Service, Hosp., Nursing Home & Public Employees Union Local 47 v Cleveland Tower Hotel, 606 F2d 684). Since the receiver is not an employer under subdivision (2) of section 2 of the Act, section 301 is not applicable here. Thus, the instant matter must be decided entirely under State law.
As a designee appointed in accordance with statutory law and as the representative of the commissioner, petitioner is not an employer within the meaning of subdivision (2) of section 2 of the Act. Subdivision (2) of section 2 specifically excludes a State or a political subdivision thereof from the definition of “employer”. Since the commissioner has complete control over the operations of Kings Harbor pursuant to subdivision 2 of section 2810 of the Public Health Law, Kings Harbor is a political subdivision of the State of New York.
By decision dated July 12, 1979, the Regional Director, Region 2, National Labor Relations Board, held that Kings *173 Harbor as presently constituted is not subject to the jurisdiction of the National Labor Relations Board. The director based her decision upon the fact that the Department of Health is a political subdivision of the State of New York and that since the commissioner exercises substantial control over Kings Harbor, the State or political subdivision exclusion in subdivision (2) of section 2 of the Act is applicable to the receivership. The general counsel of the National Labor Relations Board affirmed the director’s determination on October 31, 1979.
In view of the National Labor Relations Board’s decision that the receiver is not an employer subject to the jurisdiction of the Act, the receiver cannot be held to be an employer for purposes of section 301 of the Act. Subdivision (2) of section 2 defines the term “employer” for all sections of the Act, including section 301. Since the receiver is not an employer for purposes of National Labor Relations Board jurisdiction, the receiver cannot be an employer under section 301. Therefore, this court must apply State law in determining this proceeding.
Teamsters Local v Lucas Flour (supra) does not, as Local 144 contends, require the application of Federal law to the instant case. Lucas Flour merely requires that Federal law must be applied by State courts in contract actions arising under the Act. The case under consideration here does not arise under section 301 or any other Federal law.
The court concludes secondly that the arbitration proceeding should be stayed in the absence of an agreement by the receiver to arbitrate prereceivership disputes.
The courts rather than arbitrators must generally determine whether an agreement to arbitrate has been made between the party seeking and the party objecting to arbitration (Matter of Finsilver, Still & Moss v Goldberg, Maas & Co., 253 NY 382). The duty to arbitrate a labor dispute is a creation of contract, and a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so (Matter of Cross & Brown Co. [Nelsori], 4 AD2d 501). Since the receiver never assumed the obligation to arbitrate disputes which arose prior to February 13, 1979, a stay of the arbitration must be granted.
*174 The collective bargaining agreement between Kings Harbor and Local 144 antedated the appointment of the commissioner as receiver at Kings Harbor. The arbitration clause contained in the collective bargaining agreement cannot be enforced against the receiver with respect to prereceivership disputes because the receiver never agreed to arbitrate such disputes and because the provisions of subdivision 2 of section 2810 of the Public Health Law prevent a receiver from being required to arbitrate obligations antedating his appointment as receiver.
Section 2810 (subd 2, par c) specifically provides: “Any receiver appointed pursuant to this subdivision shall have all of the powers and duties of a receiver appointed in an action to foreclose a mortgage on real property”. One of the most significant powers bestowed upon such a receiver is the power to affirm or reject the rights and obligations of the interest in his caretaking (Matter of Riker [Browne], 204 NYS2d 60).
In Riker, a case similar to the instant matter, the petitioner, appointed by court order in a mortgage foreclosure action, was authorized to continue a hotel business, since the interests of the parties required such an order to preserve the subject of the mortgage lien. Thereafter, a union served notice upon the receiver to arbitrate certain labor grievances pursuant to a collective bargaining agreement previously entered into by the prereceivership owners. The receiver then petitioned the court to stay the arbitration. The court, in granting the stay, stated (Matter of Riker [Browne], supra, p 62): “A provisional receiver is born by order of the court and he acts merely as its arm. He is appointed to perform a specific function; here to preserve value by running a business. He must have freedom of action to do those acts most beneficial to his estate which are authorized by the court. Within such sphere he may affirm or reject the rights and obligations of the interest he is caretaking, and it would be inconsistent to compel arbitration or decree specific performance against him on obligations antedating his creation (13 Carmody Wait 432 et seq.; Clark Law of Receivers, pp. 710, 714; Hanna v Florence Iron Co. of Wisconsin, 222 N.Y. 290, 118 N.E. 629; Stokes *175 v. Hoffman House of New York, 46 App. Div. 120,61 N.Y.S. 821, affirmed 167 N.Y. 554, 60 N.E. 667, 53 L.R.A. 870; Isaac McLean Sons Co., Inc. v. William S. Butler & Co., D.C., 227 F. 325).”
Justice Herman’s decision in Matter of Rallen, (No. 5220/77, Supreme Ct, New York County, June 13,1977) is clearly distinguishable on the facts and, in this court’s opinion, misstates the applicable law. In Rallen, the court held that the then Commissioner of Health, Robert P. Whalen, and his designee, Binder, were required to arbitrate a contractual dispute with a union, which dispute apparently arose subsequent to the date of receivership and was a result of the receiver’s own actions. Here, however, the disputes over which Local 144 seeks arbitration occurred prior to the receivership. In addition, while Justice Herman correctly acknowledged that “Sec. 2810(2) (c) of the said law provides that any receiver so appointed shall have the powers and duties akin to that of a receiver appointed in a real property mortgage foreclosure action”, he mistakenly concluded “[s]uch broad powers would include necessarily the requirement to honor all contractual commitments made by Whalen’s predecessor.” Not only did Justice Herman fail to support his conclusion with case law, but his conclusion as to the powers and duties of a receiver appointed in a real property mortgage foreclosure is contradicted by the decision in Matter of Riker (Browne) (204 NYS2d 60, supra). As distinguished from Justice Herman’s decision, the court’s decision in Riker is amply supported by prior legal, authority.
Where a receiver is appointed by court order, as in the instant case, he is not automatically bound by the prior contractual obligations of the prereceivership entity. To be so bound, the receiver must affirmatively indicate his election to be responsible for the prior obligations of the former operators (see Hanna v Florence Iron Co., 222 NY 290). Clearly, the petitioner, as the receiver’s designee, did not expressly or impliedly assume the liabilities which the prereceivership licensed operators incurred under their collective bargaining agreement with Local 144. In fact, counsel for the receiver specifically refused to assume such obligations. Since neither the receiver nor his designee was *176 a party to the contract containing the arbitration clause at the time the alleged violations occurred and since neither adopted the contract for the time prior to February 13, 1979, the receiver cannot be forced to arbitrate an issue which he never agreed to arbitrate (Matter of Swift & Co., 76 NYS2d 881).
Assuming, arguendo, that the “successorship” provision in the agreement, required the receiver to comply with the grievance and arbitration procedures, the successorship provision nevertheless does not furnish any basis for requiring the receiver to arbitrate prereceivership disputes.
Moreover, where, as here, private arbitration impinges upon a broad statutory scheme which invests plenary jurisdiction and powers in a State officer, it has been deemed ipso facto to violate public policy. For example, in Matter of Knickerbocker Agency (Holz) (4 NY2d 245), the State Superintendent of Insurance, as liquidator of an insolvent insurance company, commenced an action to recover unearned commissions from the company’s agents. The agents raised the defense that their employment contracts required arbitration of the dispute. The Court of Appeals rejected this defense, reasoning that since the Insurance Law set forth a comprehensive method for concluding the affairs of insolvent insurance companies, the Supreme Court" was implicitly vested with exclusive jurisdiction over claims for or against an insurance company in liquidation. The court noted further that although the superintendent takes the place of the insolvent insurer for all practical purposes, it is clear from the statutory scheme that the Legislature did not contemplate turning over the administration of liquidation proceedings and incidental actions and proceedings to private arbitrators (see, also, Matter of Allcity Ins. Co. [Kondak], 66 AD2d 531, 536).
Just as private arbitration in Knickerbocker interfered with the superintendent’s duties as liquidator of a defunct insurance company, arbitration of disputes which arose out of actions taken by the prereceivership operators would substantially interfere with the commissioner’s duties as receiver of an operationally deficient health care facility. In both instances, a State officer has been granted plenary *177 responsibility to conduct a private enterprise in place of its former operator pursuant to a comprehensive, judicially enforced legislative scheme.
As in Knickerbocker, the use of the arbitral forum here is inconsistent and incompatible with the exercise by the receiver of his court-mandated, statutory functions in operating Kings Harbor. It is utterly incompatible with this court’s jurisdiction over the receivership pursuant to section 2810 of the Public Health Law and with the commissioner’s duties as receiver pursuant to court order to require the commissioner to be bound, without his consent, to a prereceivership arbitration agreement.
Clearly, the commissioner does not have the knowledge with which to defend the disputed actions of the prereceivership licensed operators; furthermore, he should not be required to expend time and money to defend actions which antedated his appointment. The commissioner, as court-appointed receiver, has been mandated by court order to “take all necessary and practical steps to eliminate serious operating deficiencies and to attempt to maintain and/or regain medicaid reimbursement from the federal government”. In carrying out this mandate, the commissioner should not be held responsible for defending the collective bargaining agreement disputes between the prereceivership licensed operators and Local 144. Since the prereceivership licensed operators are in existence and subject to arbitration, it is they who should be held accountable to Local 144, not the commissioner. The commissioner’s efforts, pursuant to subdivision 2 of section 2810 of the Public Health Law, are required to be directed to future actions for the benefit of the public and are not to be spent on prereceivership matters which merely concern Local 144 and the former licensed operators.
It should also be noted that section 2810 (subd 2, par c) of the Public Health Law specifically mandates that the receiver shall honor all leases, mortgages and chattel mortgages. Nowhere, however, does section 2810 mandate the honoring of a collective bargaining agreement or other contracts other than those listed, and under the maxim expressio unins est exclusio alterius, it would seem that the Legis *178 lature intended that collective bargaining agreements did not have to be honored unless the receiver specifically agreed to do so.
The cases cited in point II of the respondents’ memorandum in opposition are inapposite and not on point. Indeed, the respondents’ reliance on John Wiley & Sons v Livingston (376 US 543) and Howard Johnson Co. v Hotel Employees (417 US 249) is entirely misplaced, since these cases arise under section 301 of the National Labor Relations Act and do not alter the foregoing principles of law in this State.
Similarly, Matter of Bethbowl Corp. (Local Union 3108 United Brotherhood of Carpenters & Joiners of Amer. A.F.L.-C.I.O. (54 Misc 2d 700), relied upon by the respondents, is also inapplicable here because it, too, arose under section 301 of the Act and involved the construction of what that court believed to be Federal arbitration law, which was deemed controlling because the parties fell within the purview of the Act. Moreover, Bethbowl did not hold that a successor employer was obligated to arbitrate disputes between the union and the predecessor employer.
The respondents’ reliance upon Matter of Public Ledger (161 F2d 762) is likewise misplaced. Public Ledger dealt with the priority to be given by a trustee in bankruptcy to employees’ claims for vacation pay and severance benefits. The court there held that vacation pay earned by employees prior to the imposition of a Chapter X trusteeship was not an administration expense and therefore not a liability entitled to priority, unlike vacation pay accrued after the imposition of the trusteeship.
In Truckdrivers Local Union No. 807, Int. Brotherhood of Teamsters v Bohack Corp. (541 F2d 312), relied upon by the respondents, the dispute sought to be arbitrated arose months after the employer became a debtor-in-possession under Chapter XI. On the other hand, the instant dispute subjects to be arbitrated arose prior to the receivership. Thus, the Bohack decision is inapposite.
Finally, the contention by the respondents that the receiver has agreed to arbitrate any and every dispute under the agreement is incorrect. The respondents cannot point to any instance where the receiver has consented to arbitrate *179 a dispute that arose before February 13, 1979. In fact, the receiver has consistently refused to consent to submit to arbitration of prereceivership disputes.
In view of the foregoing, the three affirmative defenses raised in the respondents’ answer must be rejected.
First, the lack of an arbitration agreement as to prereceivership contract disputes is a valid ground for staying the instant arbitration proceeding.
Second, although the receiver may have assumed the agreement, this was done on a prospective basis and it does not apply to disputes arising prior to February 13, 1979. The rejection in the Public Ledger case of the doctrine of “experimental assumption” in no way controls the result here because it applied to the liability of a trustee for all, as opposed to some, contractual obligations arising during the trusteeship. The Public Ledger decision did not require the bankruptcy trustee therein to accept liability for pretrusteeship contractual obligations because of the trustee’s assumption of other obligations arising during the period of trusteeship. Moreover, a Federal bankruptcy trustee is totally different from a State receivership under the Public Health Law, and in any event, different policy considerations prevail — as set forth in Matter of Riker (Browne) (204 NYS2d 60, supra) — with respect to liability for prereceivership claims.
Third, whether or not the agreement survives the appointment of a receiver, the law of this State is clear that a receiver may not be compelled to arbitrate disputes which antedate the receivership unless the receiver specifically elects to be so bound. The receiver here has not agreed to arbitrate disputes arising before February 13, 1979, and therefore he has not agreed to arbitrate the prereceivership disputes involved herein.
In sum, the commissioner, as receiver under subdivision 2 of section 2810 of the Public Health Law is endowed with the powers and duties of a receiver in a mortgage foreclosure action. Therefore, since neither the commissioner nor his designee has ever consented to arbitrate prereceivership disputes, the court grants the motion to stay arbitration.