Peter OTTLEY, John Kelley, Austin Cedeno, Frank Perez, Bartholomew J. Lawson, Nancy Lester, Fred Wilkins, and William McCarthy, as Trustees of the New York City Nursing Home-Local 144 Welfare Fund and the Local 144 Nursing Home Pension Fund; and Local 144, Hotel, Hospital, Nursing Home & Allied Services Union, SEIU, AFL–CIO, Plaintiffs-Petitioners,

v.

SHEEPSHEAD NURSING HOME, Defendant-Respondent.

No. 85 Civ. 986 (JFK).

United States District Court, S.D. New York.

March 26, 1985.

Sarah Siskind, Vladeck, Waldman, Elias & Englehard, P.C., New York City, for plaintiffs-petitioners.

Morris Tuchman, Brenda Pilchick, New York City, for defendant-respondent.

## AMENDED OPINION and ORDER

KEENAN, District Judge:

Plaintiffs-petitioners move for a preliminary injunction and confirmation of a labor arbitrator's award. Defendant-respondent cross-moves for an order vacating the arbitration award and dismissing plaintiff's action. For the reasons stated below, defendant's motion to dismiss the complaint is granted.

## BACKGROUND

Plaintiffs-petitioners Peter Ottley, John Kelley, Austin Cedeno, Frank Perez, Bartholomew J. Lawson, Nancy Lester, Fred Wilkins, and William McCarthy are trustees of the New York City Nursing Home-Local 144 Welfare Fund and the Local 144 Nursing Home Pension Fund. Together with Local 144, of the Hotel, Hospital, Nursing Home & Allied Services Union, Service Employees International Union, AFL–CIO, the trustees initiated this action (collectively referred to as the "Union"). Defendant is the Sheepshead Nursing Home ("Sheepshead").

On April 1, 1978 the Union entered into a contract with a multi-employer organization comprised of nursing homes. Sheepshead was a member of that organization and bound by a three-year contract providing for, among other things, the payment of pension funds by Sheepshead to the Union. In 1980, Sheepshead withdrew from the multi-employer organization; but in early 1981 an arbitrator ruled that despite Sheepshead's withdrawal from the organization, it was still bound by the contract through March 1981.

In March 1981, the multi-employer organization entered into a contract, due to expire on March 31, 1984, providing for payment of pension funds and binding arbitration. On June 30, 1982, Sheepshead agreed to be bound by the agreement between the Union and the multi-employer group with some modifications. In return for Sheepshead's promise to bargain in good faith, the Union allowed defendant to seek relief from the contract's economic terms and declined to implement them in the interim.

In a letter, dated July 28, 1982, Sheepshead requested relief from its obligation to pay contributions to the Union at a rate greater than 10%. Advisory arbitration proceedings then commenced on this matter, but no recommendation was ever issued. Sheepshead made contributions, based on a 10% contribution rate, until November 1983, after which time all payments ceased.

On April 19, 1983, the parties agreed that the contract terms from which Sheepshead sought relief, and were not otherwise resolved, would await resolution "by the fact finder."

On April 2, 1984, Sheepshead gave twenty-four hours notice of its intention to terminate the agreement. Sheepshead acknowledged its legal obligation not to make unilateral changes in certain conditions of employment until an impasse in bargaining was reached, though defendant disaffirmed any intention to extend the expired agreement.

In May 1984, Sheepshead received Demands for Arbitration over a dispute concerning the discharge of two employees. Sheepshead moved to stay the arbitration demanded by the Union. After oral argument on October 17, 1984, Judge Mary Johnson Lowe ruled that the contract was lawfully terminated on April 2, 1984 and that Sheepshead had no duty to submit post-termination discharge disputes to arbitration. Transcript at 26, *Sheepshead v.*

*Ottley,* No. 84 Civ. 4279 (S.D.N.Y. Oct. 17, 1984).

Also on October 17, 1984, Justice Aronin of the New York State Supreme Court appointed Alan I. Chopp receiver of Sheepshead to avoid the closing of the facility by state and federal authorities. *In re Parker,* No. 23550/84 (Sup.Ct. Kings Cty. Oct. 17, 1984).

In late 1984, the Union adopted a benefit termination procedure, designed to preserve the actuarial soundness and financial viability of the pension fund, under which employee benefits will be cut off when the employer fails to remit contributions for a four-month period. In December 1984, pursuant to this procedure, the Union notified Sheepshead and its employees that, as a result of Sheepshead's delinquency in fund payments, benefits would be terminated on February 4, 1985. In addition, the Union at some point sought arbitration of the pension fund payments issue and, on January 30, 1985, the arbitrator notified counsel for Sheepshead of an arbitration hearing scheduled for February 1st. Sheepshead's counsel told the arbitrator that an adjournment was needed to gather records and await the return of the receiver, who was in Europe. No adjournment was granted and Sheepshead failed to appear at the hearing. An arbitration decision in the Union's favor was issued on February 1, 1985.

The award directs Sheepshead to pay immediately to the Union delinquent contributions at the 10% rate, or $338,499.40, plus interest accrued at the rate of 12%, or $104,149.79. With regard to contributions owed over and above the 10%, the award directs Sheepshead to proceed immediately before the fact finder on its application for relief from the full contractual rates. It further directs the parties that, if no recommendation has issued by thirty (30) days from the date of the award, or if Sheepshead fails to comply with any recommenda-

tion that has issued, Sheepshead must return to contract arbitration before him for final resolution of whether it is entitled to relief from liability for contributions in excess of 10% or whether a further award should issue granting to the Union the difference between the contractually established, 15½% and 17½% contribution rates and the 10% he awarded on February 1, 1985.

On February 5, 1985, this Court issued a temporary restraining order ("TRO") compelling Sheepshead to remit the February 1985 pension fund payment on the condition that the Union post a security in the amount of the payment. On February 14, a hearing was held and the next day the Court vacated the TRO with the expectation of deciding the plaintiffs' motion prior to the due date of defendant's next payment to the Union.

## DISCUSSION

■ Plaintiffs seek to confirm the arbitrator's decision under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA" or "Act"). Section 301 provides federal jurisdiction over a defendant who is an "employer" within the meaning of the LMRA. Section 2(2) of the Act, however, excludes political subdivisions, or their agents, from coverage under the Act. The threshold issue in this case, therefore, is whether a receiver of a nursing home, appointed pursuant to New York Public Health Law § 2810(2), is an "employer" under § 2(2) of the LMRA.[1]

In *Greenblatt v. Ottley,* 106 Misc.2d 169, 430 N.Y.S.2d 958, 962 (Sup.Ct. Albany Cty. 1980), the New York State Supreme Court ruled that a receiver is not an employer under the LMRA. The court relied on a determination, by the Regional Director of the National Labor Relations Board, that since the commissioner of the State Department of Health, as receiver for the plaintiff-nursing home in that case, exercised

---

1. Plaintiffs also seek relief under the Employee Retirement Income Security Act, 29 U.S.C. § 1145 (Supp.1984) ("ERISA"). ERISA encompasses definitions under the LMRA and there-

fore, to the extent this Court is collaterally estopped from asserting jurisdiction under the LMRA to hear this case, it also lacks jurisdiction under ERISA.

substantial control over the plaintiff's operations, the political subdivision exception of § 2(2) was applicable. *Id.* The court went on to find, under state law, that arbitration proceedings should be stayed in the absence of an agreement by the receiver to arbitrate prereceivership disputes. *Id.* 430 N.Y.S.2d at 962–66.

■ The plaintiff-Union in the instant case was the defendant in *Greenblatt v. Ottley.* Thus, the doctrine of collateral estoppel, embodied in 28 U.S.C. § 1738 (1982), must apply. Section 1738 provides:

> [J]udicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of Such State ...

In *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980), the Supreme Court held that § 1738 generally requires that federal courts give preclusive effect to state-court judgments where the federal claimant has a "full and fair opportunity" to litigate the federal claim in the earlier state court case. *Id.* at 95–96, 101 S.Ct. at 415.[2] In *Allen,* the Court, in giving preclusive effect to a state court judgment on a federal Constitutional claim under 42 U.S.C. § 1983, found that there is no universal right to litigate federal claims in federal court. *See id.* at 104–05, 101 S.Ct. at 419–20.

In *Blonder-Tongue Labs, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), a case relied on in *Allen,* the Supreme Court, for the first time, rejected the requirement of mutuality. The mutuality requirement limited collateral estoppel claims to cases in which the same parties were involved in the prior lawsuit. The Court allowed a defendant to preclude a plaintiff's claim based on a prior judgment on the same issue against the plaintiff in a suit to which the defendant was not a party. That ruling has been reaffirmed, *see Allen,* 449 U.S. at 95, 101 S.Ct. at 415 and even expanded to allow "offensive" use of collateral estoppel, *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), rather than merely the "defensive" collateral estoppel employed in *Blonder-Tongue.*

Defendant in the instant action is seeking defensive use of collateral estoppel. There is little doubt that the Union received a full and fair opportunity to litigate the issue of whether a receiver, appointed under New York Public Health Law § 2810(2) (McKinneys 1977), is subject to federal jurisdiction as an employer under the LMRA in the prior state court action. Thus, the Union is collaterally estopped from relitigating that issue in this action.[3]

■ The Union contends that it is not really bringing this action against the re-

---

**2.** The Supreme Court has consistently emphasized the importance of collateral estoppel in fulfilling the purpose for which civil courts have been established: the conclusive resolution of disputes within their jurisdiction. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982). Invocation of the doctrine of collateral estoppel "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen,* 449 U.S. at 94, 101 S.Ct. at 414. This doctrine also promotes "the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Id.* at 96, 101 S.Ct. at 415; *see Kremer,* 102 S.Ct. at 1890 n. 6.

**3.** Plaintiffs contend that under *National Labor Relations Board v. National Gas Utility District,* 402 U.S. 600, 91 S.Ct. 1746, 29 L.Ed.2d 206

(1971), it is the role of a federal court, rather than a state court, to decide whether an entity is a "political subdivision" under § 2(2) of the LMRA. The Court held that, in making this determination, the lower federal courts should not rely exclusively on a state court interpretation of the state law under which the entity in question is organized. Federal, rather than state, law should control the interpretation of the LMRA. *Id.* at 602–03, 91 S.Ct. at 1748–49. *Natural Gas,* however, does not control the instant case. In *Natural Gas,* the state court interpretation relied on by the federal court was contrary to the interpretation of the National Labor Relations Board ("NLRB"). In the instant case, the state court relied on an NLRB interpretation in finding that a receiver is not an employer under the LMRA. More important, we based today's decision on principles of collateral estoppel; we are not simply deferring to a state court interpretation of federal law.

ceiver, but against Sheepshead. Under a state receivership order, however, the receiver cannot be disentangled from the institution he is responsible for overseeing. New York law empowers a receiver to collect all incoming payments and administer the health care facility in all respects. N.Y.Pub.Health Law § 2810(2)(c). In the instant case, Chopp, as receiver for Sheepshead, was specifically empowered to collect all Medicaid payments and other receivables and to take charge of all Sheepshead bank accounts, records, equipment and supplies. *In re Parker*, at 5–6.

Alan Chopp was not appointed to that position as part of a conspiracy to defraud the Union pensioners of their benefits. The court order appointing a receiver, made pursuant to § 2810(2), *see In re Parker*, at 6, was done "[a]s a means of protecting the health, safety and welfare of the patients in a residential health care facility ..." § 2810(2)(a). To this end, state law, § 2810(2)(c), *see Greenblatt*, 430 N.Y.S.2d at 963; *In re Riker*, 204 N.Y.S.2d 60, 62 (Sup.Ct.Suffolk Cty.1960), and the state court order appointing Chopp, *In re Parker*, at 6, gave Chopp the discretion to affirm or reject prereceivership and receivership debts. His opposition to this lawsuit belies any notion that he has affirmed the alleged obligations of Sheepshead to the Union. Thus, Sheepshead, as administered by Chopp, cannot be found liable to the Union in this action.

■ The Court, however, is aware of no reason why the Union could not proceed against the prereceivership operators and owners of Sheepshead. They agreed to be bound by the contract with the Union and the court order appointing Chopp as receiver explicitly states that "the present operators will remain liable for pre-receivership, and receivership debts, and obligations, to the extent not paid by the Receiver." *In re Parker*, at 6.[4] The appointment of a receiver does not shield Sheepshead's prereceivership operators from liability; only the receiver and institution are shielded.

## CONCLUSION

In *Greenblatt v. Ottley,* a New York State court decided that receivers, appointed under New York Public Health Law § 2810(2), are not employers under the LMRA. Since the plaintiffs in the instant action were the defendants in *Greenblatt,* and they had a full and fair opportunity to litigate this jurisdictional issue in that state case, plaintiffs are collaterally estopped, under 28 U.S.C. § 1738, from relitigating the jurisdictional issue before this Court.

Accordingly, defendant's motion to dismiss plaintiffs' complaint is granted.[5]

Plaintiffs are directed to return to defendant the February 10, 1985 payment made to the Union, pursuant to the TRO issued by this Court on February 5, 1985, by March 15, 1985. Should this payment not be made, plaintiffs will forfeit their posted $10,000 security and pay defendant any deficiencies from the February 10th pension payment in excess of the security. If the security exceeds the pension payment, any surplusage shall be returned to plaintiffs.

SO ORDERED.

---

4. In *Ottley v. Crown Nursing Home,* No. 85 Civ. 100 (S.D.N.Y. Feb. 19, 1985), Judge Sprizzo refused to enforce an arbitration decision, at the request of the same union involved in the instant case, against the receiver of another nursing home. (Transcript at 3–6). In denying the Union's motion to confirm the arbitration award, Judge Sprizzo said: "I cannot enforce the arbitration award against the Receiver be-

cause the Receiver is not a party to the agreement. That is elementary contract law." (Transcript at 8).

5. The Court is not vacating the arbitration award. Having failed to find jurisdiction to hear this case, we do not reach that, or any of the many other issues raised in this case.