784 F.2d 62
 121 L.R.R.M. (BNA) 2749, 104 Lab.Cas. P 11,954,
6 Employee Benefits Ca 2825
 Peter OTTLEY; John Kelley; Austin Cedeno; Frank Perez;
Bartholomew J. Lawson; Nancy Lester; Fred Wilkins and
William McCarthy, as Trustees of the New York City Nursing
Home--Local 144 Nursing Home Pension Fund; and Local 144,
Hotel, Hospital, Nursing Home & Allied Services Union, SEIU,
AFL-CIO, Plaintiffs-Appellants,
v.
SHEEPSHEAD NURSING HOME, Defendant-Appellee.
 No. 85-7296.
 United States Court of Appeals, Second Circuit.
 Argued Oct. 2, 1985.
 Decided Jan. 28, 1986.
 
 Sarah E. Siskind, New York City (Vladeck, Waldman, Elias & Engelhard, P.C., New York City, of counsel), for plaintiffs-appellants.
 Morris Tuchman, New York City, for defendant-appellee.
 Before CARDAMONE, GEORGE C. PRATT and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Plaintiffs, Local 144, Hotel, Hospital, Nursing Home & Allied Services Union, SEIU-CIO ("Local 144"), and eight trustees of the multi-employer employee benefit funds established for the members of Local 144 ("trustees"), appeal from a judgment of the United States District Court for the Southern District of New York, 607 F.Supp. 952 (John F. Keenan, Judge ) dismissing both of the claims pleaded in their complaint against defendant Sheepshead Nursing Home ("Sheepshead"). In the first claim, brought pursuant to section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. Sec. 185 (1982), Local 144 and the trustees sought confirmation of a February 1, 1985 arbitration award directing Sheepshead to make immediate payment of certain contributions, with interest, to the employee benefit funds ("funds"). The second claim was brought by the trustees under the provisions of section 502(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1132(e)(1) (1982), for injunctive relief directing Sheepshead to pay the same delinquent contributions as well as timely future contributions as they become due, interest, liquidated damages, costs and attorneys' fees. In dismissing the complaint, the district court held that Section 301 of the LMRA confers federal subject matter jurisdiction only over a defendant who is an "employer" with the meaning of the Act. Political subdivisions are exempted from being considered employers under the Act, 29 U.S.C. Sec. 152(2), and the district court held that these plaintiffs were collaterally estopped from litigating the political subdivision exemption to the LMRA, claimed by Sheepshead, by virtue of a decision in an action to which Local 144 was a party in the New York Supreme Court. We reverse.
 
 I. BACKGROUND
 
 2
 On April 1, 1978, Local 144 entered into three-year collective bargaining agreements[1] with the Greater New York Health Care Association ("Association"), a multi-employer nursing home organization of which Sheepshead then was a member. Among other things, the agreements required the members to make regular contributions to the funds administered by the trustees. Following Sheepshead's withdrawal from the Association in 1980, Local 144 and the Association entered into new collective bargaining agreements covering the period 1981-1984. On June 30, 1982, Sheepshead made a separate arrangement with Local 144 by which it adopted the new agreements with certain modifications. While Sheepshead agreed to continue its contributions to the funds, the modifications allowed it to renegotiate any of the economic terms of the new collective bargaining agreements it was unable to implement.[2]
 
 
 3
 By letter dated July 28, 1982, Sheepshead notified Local 144 that it was unable to implement its contributions to the funds at rates in excess of ten percent and requested renegotiation of the contractual obligation to contribute at considerably higher rates.[3] When renegotiation efforts proved unsuccessful, the issue was referred for advisory mediation and fact-finding pursuant to the arrangement between Sheepshead and Local 144. Although commenced, mediation proceedings never were concluded, and the mediator issued no recommendations. After sending its letter to Local 144 on July 28th, Sheepshead remitted regular contributions to the funds at the reduced rate of ten percent until November of 1983, when it ceased payments altogether.
 
 
 4
 On February 1, 1985, Local 144's claims for delinquent fund contributions were submitted to an arbitrator. On the same day, the arbitrator made an award directing Sheepshead to pay the funds the sum of $338,499.40 plus interest in the amount of $104,149.79.[4] Prior to the arbitration award, certain residents of Sheepshead had applied to the New York Supreme Court, Kings County, for the appointment of a receiver in order to forestall the closing of the facility by the New York State Health Department for violations of health and safety regulations. The application was made under the provisions of N.Y.Pub. Health Law Sec. 2810(2) (McKinney 1985).[5] On October 17, 1984, over the objection of the Commissioner of Health ("Commissioner"), who had sought to revoke Sheepshead's operating certificate, Supreme Court Justice Aronin appointed Alan I. Chopp receiver of Sheepshead with full authority to operate the facility. The order of appointment directed that the receiver take charge of all assets and records and that there be no involuntary transfer of patients during the period of receivership. Joint Appendix at 238-41. Chopp was a professional nursing home administrator and consultant whose name appeared on the Commissioner's list of those qualified to serve as nursing home receivers. He previously had served as a consultant to Sheepshead and intended to purchase the nursing home facility. Joint Appendix at 161.
 
 
 5
 In the district court, Local 144 and its trustees moved for confirmation of the arbitrator's award and for a preliminary injunction directing the current payment of fund contributions together with interest, costs and attorneys' fees. Sheepshead cross-moved to dismiss the action for lack of subject matter jurisdiction, based on the political subdivision exemption of the LMRA, 29 U.S.C. Sec. 152(2), and to vacate the arbitrator's award.[6] Applying the doctrine of collateral estoppel in granting the motion to dismiss, Judge Keenan relied on Greenblatt v. Ottley, 106 Misc.2d 169, 430 N.Y.S.2d 958 (N.Y.Sup.Ct. Albany County 1980), wherein it was held that a receiver appointed under the provisions of the New York Public Health Law was included within the political subdivision exemption and was not an employer as defined in the LMRA and therefore not subject to its provisions. Since Judge Keenan found that the definitional provisions of the LMRA and ERISA were the same, he dismissed the ERISA claim as well.
 
 
 6
 Local 144, a party to the Greenblatt action, joins the trustees in arguing on this appeal that the collateral estoppel doctrine was applied improperly by the district court. Sheepshead takes the opposite view and argues also that the dispute between the parties now is mooted by virtue of a Memorandum of Understanding dated April 4, 1985 providing for the receiver to make contributions to the funds commencing October 17, 1984, the date of the receiver's appointment.
 
 II. DISCUSSION
 
 7
 "It is now well settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School District Board of Education, 465 U.S. 75, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); 28 U.S.C. Sec. 1738 (1982). New York courts apply the doctrine of collateral estoppel or issue preclusion to bar relitigation of questions previously decided where (1) the particular factual and legal issues in question were necessarily raised and decided in the prior action; (2) the party against whom the doctrine is invoked had a full and fair opportunity to litigate those issues in the previous action; and (3) the issues in the present controversy and in the prior action are identical. Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 485-86, 414 N.Y.S.2d 308, 311, 386 N.E.2d 1328, 1331 (1979).
 
 
 8
 The identity of the material issues necessarily decided in the previous proceeding is the controlling element. Ryan v. New York Telephone Co., 62 N.Y.2d 494, 500-01, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490 (1984). The burden of demonstrating identicality rests upon the party claiming the benefits of the collateral estoppel doctrine. Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 456, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985); Schwartz v. Public Administrator, 24 N.Y.2d 65, 73, 298 N.Y.S.2d 955, 962, 246 N.E.2d 725, 732 (1969). On the record before us, Sheepshead has failed to show clearly that there is no distinction between the factual issues decided in Greenblatt v. Ottley and those presented here.
 
 
 9
 In Greenblatt, Local 144 was the respondent in a proceeding brought to stay an arbitration it had initiated on behalf of certain employees of the Kings Harbor Health Care Center ("Kings Harbor"). Robert Greenblatt, the petitioner in the proceeding, was an employee of the New York State Department of Health designated to take charge of the Kings Harbor facility by the Commissioner, who had been appointed as receiver of the facility pursuant to N.Y.Pub. Health Law Sec. 2810(2).[7] In granting the stay of arbitration, Judge Doran observed that one of the parties in a suit for violation of a labor contract pursuant to section 301 of the LMRA must be an employer.[8] He then found as follows:
 
 
 10
 As a designee appointed in accordance with statutory law and as the representative of the Commissioner, petitioner is not an employer within the meaning of Sec. 2(2) of the Act [29 U.S.C. Sec. 152(2) ]. Section 2(2) specifically excludes a state or a political subdivision thereof from the definition of "employer." Since the Commissioner has complete control over the operation of Kings Harbor pursuant to Public Health Law Sec. 2810(2), Kings Harbor is a political subdivision of the State of New York.
 
 
 11
 106 Misc.2d at 172, 430 N.Y.S.2d at 962.
 
 
 12
 There are important factual differences between the receivership described in Greenblatt and the receivership here. The Commissioner was appointed receiver of Kings Harbor on his own application; here, the receiver was appointed on application of residents of the nursing home. Pursuant to statutory authority, the Commissioner designated Robert Greenblatt, an employee of the Health Department, to act in his place as receiver; Chopp was appointed receiver of Sheepshead by the state court over the Commissioner's objection and, presumably, was not subject to the Commissioner's supervision. He was a private businessman interested ultimately in purchasing the Sheepshead Nursing Home. Whether there is any legal distinction between a public official serving as a nursing home receiver and a private citizen serving in the same capacity for the purpose of determining the applicability of the political subdivision exemption is an issue that need not be decided now.[9] Suffice it to say, there simply is an insufficient identity of facts in the two receiverships to allow, under the doctrine of collateral estoppel, the conclusion that Chopp is entitled to the exemption. That conclusion cannot be arrived at without affording Local 144 a full and fair opportunity to litigate the factual issues necessary to determine whether Chopp is an employer within the definition of the LMRA.
 
 
 13
 Finally, Sheepshead's contention, that the Memorandum of Understanding dated April 4, 1985 between Receiver Chopp and the trustees moots this action, is rejected. Although the Memorandum provides for payment of contributions to the funds from October 17, 1984 forward, there is a specific reservation of any claims the trustees may have for liquidated damages, interest on delinquent contributions or "any additional obligations which may exist." Brief for Defendant-Appellee (erroneously titled "Brief for Plaintiffs-Appellee") at 25. The trustees continue to seek recovery of the pre-October 17th delinquency (together with accrued interest and liquidated damages), liquidated damages and interest due on the post-October 17th delinquency, and attorneys' fees and costs. Reply Brief for Plaintiffs-Appellants at 5. These unsatisfied claims preserve the viability of the action and defeat the mootness argument. See Ellis v. Brotherhood of Railway, Airline & Steamship Clerks, 466 U.S. 435, 104 S.Ct. 1883, 1889, 80 L.Ed.2d 428 (1984).
 
 III. CONCLUSION
 
 14
 Accordingly, the decision below is reversed and the judgment vacated; the matter is remanded to the district court for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 There were three separate collective bargaining agreements covering three separate bargaining units. Joint Appendix at 6
 
 
 [2]
 Paragraph 2 of the letter agreement dated June 30, 1982, provides as follows:
 In the event that the Employer is unable to implement any of the economic terms of the April 1, 1981 through March 31, 1984 collective bargaining agreement between Local 144 and the Greater New York Health Care Facilities Association, Inc., and upon giving written notice to the Union of its inability to do so within ninety (90) days from the date of execution of the collective bargaining agreement between the parties, the parties shall renegotiate in good faith with regard to the items which the Employer is unable to implement. In the event that they are unable to agree, the matter will go to Eric J. Schmertz, Esq. for advisory mediation and fact finding, only.
 Complaint, exhibit D.
 
 
 [3]
 Sheepshead was obligated to make monthly contributions to the funds at the rate of 15 1/2% from April 1, 1981 to October 1, 1983, and 17 1/2% after October 1, 1983. Complaint, exhibit B
 
 
 [4]
 The arbitrator also directed the parties to resume proceedings before the fact-finder and provided that if the fact-finder failed to issue a recommendation within 30 days or if the employer failed to comply with the recommendation when issued, "then the parties shall return to the undersigned Arbitrator for the final resolution of whether the Employer is entitled to relief from any liabilities to the Funds based on a contribution rate in excess of 10%, or whether a further award shall issue granting to the respective Funds the difference between the contractually established contribution rate and the 10% herein awarded." Complaint, exhibit N
 
 
 [5]
 That section provides, in part, as follows:
 As a means of protecting the health, safety and welfare of the patients in a residential health care facility, whenever the commissioner revokes the operating certificate of such a facility he shall apply to the supreme court in the county where the facility is situated for an order directing the owner of the land and/or structure on or in which the facility is located to show cause why the commissioner, or his designee, should not be appointed receiver to take charge of the facility.
 N.Y.Pub. Health Law Sec. 2810(2)(a). Although the application purportedly was made under the provisions of this statute, it is obvious that only the Commissioner is entitled to make such an application.
 
 
 [6]
 Sheepshead contends that its obligation to arbitrate terminated with the expiration of the collective bargaining agreement on April 2, 1984. Joint Appendix at 78
 
 
 [7]
 Although the statute requires that the Commissioner or his designee be appointed as receiver, N.Y.Pub. Health Law Sec. 2810(2)(b), it appears that Greenblatt never was actually appointed as receiver
 
 
 [8]
 "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. Sec. 185(a)
 
 
 [9]
 The court in Greenblatt appeared to place great emphasis on the public status of the Receiver and Commissioner in that case in finding the political subdivision exemption applicable. It cited with approval a decision of the Regional Director of the NLRB
 The director based her decision upon the fact that the Department of Health is a political subdivision of the State of New York, and that since the commissioner exercised substantial control over Kings Harbor, the state or political subdivision exclusion in subdivision (2) of section 2 of the Act is applicable to the receivership.
 
 
 [106]
 Misc.2d at 173, 430 N.Y.S.2d at 962