The REPUBLIC OF the PHILIPPINES, Plaintiff,

v.

Ferdinand MARCOS and Imelda Marcos, et al., Defendants.

No. 86 Civ. 2294(PNL).

United States District Court, S.D. New York.

July 7, 1986.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City (Michael J. Silverberg, of counsel), for petitioners Joseph and Ralph Bernstein and New York Land Co.

Bernstein, Carter & Deyo, New York City (Philip Carter, of counsel), for petitioners Canadian Land Co. of America, N.V., Herald Center, Ltd., and Nyland (C F 8) Ltd.

Rosenman Colin Freund Lewis & Cohen, New York City (Gerald Walpin, Lawrence G. Golde, of counsel), for defendant Ancor Holdings, N.V.

Golenbock, Eiseman, Assor, Bell & Perlmutter, New York City (Jeffrey T. Golenbock, David J. Eiseman, of counsel), for Glockhurst Corp., N.V.

James Drew & Associates, Washington, D.C. (Severina Rivera, of counsel), Center for Constitutional Rights, New York City (Morton Stavis, Peter Weiss, Franklin Siegal, Juan Saavedra-Castro, of counsel), for respondent.

## OPINION AND ORDER

LEVAL, District Judge.

### I

■ Defendants move to stay all further discovery pending the decision of the Court of Appeals on defendants' appeal from this court's grant of a preliminary injunction.

The reasons advanced for the relief are: that the decision of the Court of Appeals could dismiss the action; alternatively its decision might alter the scope and nature of discovery proceedings; and that, in any event, plaintiff has no need for discovery while protected by the existing preliminary injunction.

As to the likelihood of dismissal of the action by the Court of Appeals, defendants cite *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) for its requirement of minimum jurisdictional contacts; *Islamic Republic of Iran v. Pahlevi*, 94 A.D.2d 374, 464 N.Y.S.2d 487 (1st Dep't 1983), *aff'd*, 62 N.Y.2d 474, 478 N.Y.S.2d 597, 467 N.E.2d 247 (1984) for dismissal based on *forum non conveniens;* and *Ope Shipping Ltd. v. Allstate Insurance Co.*, 687 F.2d 639 (2d Cir.1982) for the inappropriateness of piercing the corporate veil beyond the property holding corporations.

Although these contentions would no doubt require careful attention if advanced in a proper manner on an adequate record, that has not been done. First, as to the principles of minimum jurisdictional contacts under *Shaffer v. Heitner*, such arguments belong to Ferdinand and Imelda Marcos, who are in default—not to these defendants. No motion to dismiss has been made based on the *Shaffer* principles. (I note further that documents discovered by plaintiff in the Philippines, some of which are mentioned in this court's opinion granting preliminary injunction, show evidence of New York activity on the part of the Marcoses, conducted personally and through agents, which after inquiry, might well satisfy *Shaffer* requirements.)

As to *forum non conveniens*, although these defendants have made passing references to it, there has been no motion to dismiss on that basis. Such a motion generally turns on many issues of fact none of which have been explored or even considered. Furthermore, as noted in the court's opinion of June 26, 1986, this lawsuit, unlike *Pahlevi*, does not set out to explore and adjudicate allegation of wrongful conduct by President Marcos during his presidency. It seeks only the enforcement of Philippine decrees—an existing Philippine decree freezing various assets and asking foreign governments to cooperate in entering such freeze, and a future decree of confiscation. The factors that supported the finding of *forum non conveniens* in *Pahlevi* are largely absent here.

As to the appropriateness of piercing corporate veils, such questions depend on the facts and are obviously premature prior to discovery. And once again, no motion to dismiss has been made based on that theory.

Defendants have also argued that any acquisition of property by Marcos during his presidency is protected from U.S. court adjudication by the principles of *Banco De Espana v. Federal Reserve Bank*, 114 F.2d 438 (2nd Cir.1940) and that any Philippine decree of confiscation will be unenforceable in U.S. courts under authority of *Republic of Iraq v. First National City Bank*, 353 F.2d 47 (2d Cir.1965), *cert. denied*, 382 U.S. 1027, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966). No motion to dismiss has been made on either ground. (Indeed, defendants have never moved to dismiss the action on any theory in the district court.) It is evident, furthermore, that if motions were made on either ground *at this stage of the proceeding*, they could not be sustained; the issue would be raised prematurely.

*Banco de Espana* ruled that a particular Spanish governmental decree affecting the

ownership of property would be upheld against challenge in the U.S. courts, based on the act of state doctrine. That case simply does not support the proposition that any and all acquisitions of property by a foreign president during his tenure, no matter how accomplished, must be accorded immunity in U.S. courts under the act of state doctrine. What is more, the *Banco de Espana* precedent is barely applicable to the defendants' proposition. The U.S. court is not being asked in this case, as it was there, to rule on the legitimacy of acquisition of property in the foreign country. It is being asked, as noted above, to give effect to Philippine governmental decrees affecting the Marcos's assets. If anything, the *Banco de Espana* precedent instructing U.S. courts to honor foreign governmental decrees altering ownership of property of foreign subjects, is more helpful to the plaintiff than to the defendants on the present state of the record.

As to *Iraq*, it is premature for defendants to contend it commands dismissal of the action. In *Iraq*, the Court of Appeals ruled that a particular foreign decree of confiscation was not entitled to recognition affecting property in the United States because it contravened "the law and policy of the United States." *Id.* at 52. Whether any future Philippine governmental action will contravene or comport with the "law and policy" of the United States cannot be judged at this time. As to the existing freeze decree promulgated by the Philippine government, no reason has been advanced why such a provisional stay preserving the *status quo* to allow time for investigation and considered action contravenes our law and policy.

Because no motion has been made in the district court seeking dismissal on any of the asserted grounds, no district court ruling has ever been made which is now on appeal. In addition, it appears (based on such sketchy discussion as there has been of these contentions in the district court) that further information and discovery would be necessary to an adjudication of dismissal on any of those grounds. Defendants' contention that the action is likely to be terminated by the decision of the Court of Appeals, therefore, seems unlikely and gives insufficient reason for staying discovery.

Nor would a dissolution of the preliminary injunction by the Court of Appeals necessarily be a reason to terminate discovery (depending, of course, on the grounds). If such dissolution were based on a finding of insufficient showing by plaintiff, plaintiff would need further discovery to attempt to remedy the insufficiency. It is true that a dissolution of the preliminary injunction might, as a practical matter, moot the action, by permitting the defendants to transfer ownership of the buildings beyond the court's jurisdiction, or to draw out the equity in the buildings by taking mortgages. The possibility that defendants might take such action to defeat plaintiff's prospects of effective recovery is not a reason to stay discovery.

It is possible that the Court of Appeals may render a decision in a short time. It is equally possible that the Court may see no good reason to push this ruling ahead of others on its calendar, so that decision may be awaited for some time. I see no reason why plaintiff should be denied discovery while waiting for an appeal from a grant of temporary interim relief.

As reviewed in the opinion of May 2, 1986, defendants have effectively prevented plaintiffs from obtaining discovery by deposition. After brief testimony, Joseph Bernstein abruptly terminated his deposition, refusing to return until after a ruling on the motion to dissolve the TRO. Bernstein first had obtained plaintiff's consent to stay his deposition until after he had purged himself of contempt by testifying before a committee of Congress. Then, with no justification and certainly without court approval, he walked out of his deposition. This court had directed three days before that the deposition of Bernstein proceed. Glockhurst Corporation similarly refused to produce a representative until after ruling on the defendants' motion to dissolve the TRO. The same is true with

respect to the deposition of William Deyo and of other deposition testimony sought by plaintiff of the property-owning defendants.

No reasons of even colorable merit were given for such refusals. Nor were the refusals based on any authorization by the court. Although defendants stated initially that they would refuse to proceed until the court had ruled on their motions to dissolve the TRO, they failed to resume after the court had ruled on that motion. Furthermore, the refusal has continued in disregard of a court order of June 16, 1986, which allowed defendants time to submit papers in support of this motion but made clear that the court had never authorized any stay and that the making of the motions for stay should not be regarded as justifying a stay.

It is apparent that the defendants' refusal has been a united effort to obstruct plaintiff's efforts to obtain discovery. It should not be permitted to succeed.

I note further that the discovery which is at issue—the depositions of Joseph Bernstein and other representatives of the property-holding companies—relates primarily to questions of particular pertinence to a New York action, the revelation of ownership of the New York properties. Such discovery relates only secondarily, or not at all, to issues of whether President Marcos obtained property of the Philippines by wrongdoing. Thus, to the extent that rules like *forum non conveniens* and the *act of state doctrine* may pose obstacles to certain types of inquiry by a U.S. court, those are not the inquiries to which these depositions relate. Identification of the ownership of the New York properties is a particularly appropriate issue for exploration in a New York court.

The defendants' motions to stay discovery are denied. The Bernstein deposition is directed to be resumed forthwith

and, similarly thereafter, the depositions of the other property-owning companies. Should the depositions go beyond reasonable limits, it will be up to the defendants to seek a protective order confirming the scope.

## II

■ Defendant Canadian Land Company applies for authorization to draw down on a long-standing loan agreement with Security Pacific Mortgage and Real Estate Services Inc. to pay for services performed and materials provided in a program of improvement of the Herald Center building. Plaintiff opposes the application, contending that allowance of such further encumbrance of the property "may be detrimental to plaintiff's interests." As in prior instances when similar disputes have arisen, plaintiff has failed to substantiate the claim. A draw down on the loan facility, first of all, does not increase the building's debt. The incremental debt was already incurred by the contractors' deliveries of materials and services to the building. The draw down to pay the contractors merely changes the identity of the creditor from materialmen and contractors to a financial institution. Furthermore, since the building has benefitted from these improvements, presumably increasing its value, no diminution of equity results from the incurrence of the debt. There is no reason why the contractors should not be paid by the long-standing loan facilities put in place by the owners to finance the program of improvements. Plaintiff argues once again that such loans could be a fraudulent device for converting the equity into cash to be hidden away by the owner in foreign banks. Such an argument presupposes that the bills rendered are fraudulent and do not in fact represent the services and materials billed for. As before, however, plaintiff has offered no shred of substantiation for this allegation.[1] The loan agree-

---

1. Plaintiff contends it cannot assure itself of the bona fides of the payments without discovery. Although plaintiff has been denied depositions, it has had access to the documentation of the buildings. Plaintiff contends that without ei-

ther cooperation of the defendants or depositions, it is unable to sort out and understand the documentation to be assured of the bona fides of these charges. This provides additional reason why depositions should go forward.

ments provide that the banks will not make payment without independent certification of the performance of the work billed for. The Bank's satisfaction and willingness to make payment offers plaintiff considerable protection, as the bank would expose itself to liability if it paid for unsubstantiated services.

Furthermore, it has been a justification, first for the TRO, and subsequently for the preliminary injunction, that it should interfere minimally with the defendants' beneficial operation of the buildings. The court's temporary order seeks only to preserve plaintiff's eventual ability to secure an effective remedy if plaintiff wins judgment. Failure to make prompt payment to contractors would result in liens, work stoppage and inability of the building managers to procure necessary services. Plaintiff's opposition to such applications, if made without factual basis, risks to interfere unreasonably with the operation of the buildings pending final adjudication.

Accordingly, defendant's application is approved. The order defendant has submitted will be entered.

SO ORDERED.