839 F.2d 93
 CITIBANK, N.A., Plaintiff-Appellee,
v.
NYLAND (CF8) LTD., New York Land Company a/k/a Great Neckers
Realty, Inc., the Republic of the Philippines, the City of
New York, the New York City Department of Finance, the
People of the State of New York, the United States of
America and John Doe # 1 through John Doe # 900 inclusive,
the names of the last 900 defendants being fictitious, the
true names of said defendants being unknown to plaintiff, it
being intended to designate any subtenants of the mortgaged
premises who are in default of the payment of rent for which
a proceeding is now pending brought by the mortgagor and/or
other persons or parties having or claiming an interest in
or a lien upon the mortgaged premises subordinate to that of
the mortgagee, if the aforesaid individual defendants are
living, and if any or all of said individual defendants be
dead, their heirs at law, next of kin, distributees,
executors, administrators, trustees, committees, devisees,
legatees and the assignees, lienors, creditors and
successors in interest of them, and generally all persons
having or claiming under, by, through or against the said
defendants named as a class, any right, title, or interest
in or lien upon the premises described in the complaint
herein, Defendants,
New York Land Company and Nyland (CF8) Ltd., Defendants-Appellants.
 Nos. 14, 61, Dockets 87-7268, 87-7388.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 7, 1987.
Decided Feb. 10, 1988.
 
 Robert M. Abrahams, New York City (Schulte Roth & Zabel, New York City, Alan R. Glickman, Mark E. Kaplan, Sherry K. Cohen, of counsel), for plaintiff-appellee Citibank, N.A.
 Robert S. Smith, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Bruce Birenboim, of counsel), for defendant-appellant Nyland (CF8) Ltd.
 Michael J. Silverberg, New York City (Phillips, Nizer, Benjamin, Krim & Ballon, New York City, Perry S. Galler, Lawrence M. Sands, of counsel), for defendant-appellant New York Land Co.
 Elsie A. Crum, New York City (Shearman & Sterling, New York City, Charles C. Parlin, Jr., Joanna B. Shally, Koji E. Felton, of counsel), for appellee Cushman & Wakefield, Inc.
 Before LUMBARD and MINER, Circuit Judges, and KAUFMAN, District Judge.*
 LUMBARD, Circuit Judge:
 
 
 1
 Appellants, New York Land Company and Nyland, Ltd., appeal from a preliminary injunction order, announced on February 27, 1987 and entered on April 24, 1987 by Judge Whitman Knapp, of the United States District Court for the Southern District of New York. The order (1) restrained and enjoined appellant New York Land Company from interfering in any manner with the rendering of exclusive management and leasing services by the court-appointed receiver, Cushman & Wakefield, Inc., in connection with the premises at issue, 40 Wall Street, New York City, and (2) clarified appellee Cushman & Wakefield's authority as the exclusive managing and leasing agent for 40 Wall Street. New York Land claims that the district court erred in granting this injunction by failing to recognize New York Land's entitlement to manage and lease premises pursuant to a management and development agreement entered into on August 1, 1983 between it and Nyland, the owner of a long-term leasehold on the premises. We affirm.
 
 I.
 
 2
 On January 20, 1984, Citibank and Nyland entered into a mortgage agreement under which Citibank loaned Nyland $39,225,000 on a second mortgage on Nyland's leasehold interest in 40 Wall Street. When this action was commenced, Nyland owed Citibank $38,341,232.87.
 
 
 3
 The mortgage was negotiated on behalf of Nyland by the firm of Bernstein Carter & Deyo, and signed by Joseph Bernstein, a senior partner, as managing director of Nyland. In the event of a default, as defined by the mortgage, the mortgage provided for the appointment of a receiver without notice and empowered Citibank to remove Nyland and its agents from the property and take over the management and leasing of the property. The only obligations listed as superior to Citibank's second mortgage are a first mortgage held by the New York State Teacher's Retirement Fund and the ground lease.
 
 
 4
 Nyland's managing agent for the property was New York Land. New York Land's duties as agent were delineated in a Management and Development Agreement signed on behalf of Nyland by Joseph Bernstein, and on behalf of New York Land by his brother, Ralph Bernstein (a paralegal at the Bernstein firm). Joseph Bernstein, in addition to being a managing director of Nyland, was and continues to serve as president of New York Land.
 
 
 5
 During the next two and one-half years, Nyland's interest payments to Citibank and the payment of New York City real estate taxes for 40 Wall Street were late. By mid-November of 1986, interest in the amount of $424,957.84 and late payment penalties of $16,450.68 due November 1, 1986 remained unpaid to Citibank. Also unpaid was $2,102,958 of real estate taxes due July 1, 1986. Citibank alleged, and the district court found, that the failures to make those payments constituted events of default under the mortgage.
 
 
 6
 During this same period, Nyland also failed to provide Citibank with a rehabilitation report that Citibank had requested Nyland to prepare to advise Citibank of the status of various physical problems associated with the premises; it never provided Citibank with certified annual financial reports that were required under the mortgage; and it failed to deposit with Citibank advance installments of the annual real estate taxes as required under the mortgage.
 
 
 7
 On November 19, 1986, Citibank accelerated the debt due under the mortgage as provided by that agreement and commenced this action in New York Supreme Court, New York County, to foreclose the mortgage. Simultaneously with the commencement of the action, Citibank moved on notice for the appointment of a temporary receiver. Citibank requested that either William A. White, Tishman East, Inc., or Cushman & Wakefield, Inc. be appointed receiver. The Republic of the Philippines, a defendant in this action, joined in Citibank's request for a receiver.[1]
 
 
 8
 On November 25, 1986, New York Land filed a Notice of Cross-Motion to Dismiss the Action and In Opposition to the Appointment of a Receiver. In the memorandum of law submitted in support of that motion, New York Land maintained that "Citibank was not entitled to institute a receivership remedy auxiliary to this foreclosure proceeding because it would have the effect of abrogating the superior contractual management rights of The New York Land Company." On November 26, 1986, defendant Republic of the Philippines removed the action to the District Court for the Southern District, where it was initially assigned to Judge Leval.
 
 
 9
 On December 1, 1986, Citibank submitted a Reply Memorandum to support its motion for the appointment of a temporary receiver and again asserted that a receiver was being sought to assure that the building would be run properly. Citibank also argued that New York Land's right to manage the property could be no greater than Nyland's right to do so since any interest New York Land might have in the premises necessarily must be derivative of Nyland's right because New York Land was merely serving as Nyland's agent.
 
 
 10
 After a hearing on December 9, 1986, Judge Leval granted Citibank's motion and appointed Cushman & Wakefield as receiver.
 
 
 11
 On December 12, 1986, Citibank submitted a proposed receivership order to Judge Knapp, to whom the case had been assigned immediately following the granting of Citibank's receivership motion by Judge Leval. Also on that day, New York Land moved to dismiss the action for lack of jurisdiction or, in the alternative, to require the receiver to post a $75 million bond and, on December 17, 1986, it submitted a memorandum of law in opposition to Citibank's proposed order. New York Land's opposition was based on its agreement with Nyland. In its memorandum, New York Land asked the court to reconsider the appointment of any receiver and again raised the issue that the receivership was inconsistent with New York Land's control of the property.
 
 
 12
 Judge Knapp held a hearing on December 17, 1986 at which Nyland and New York Land continued to argue that the receivership was improper because of the existence of their agency agreement. After argument of counsel, Judge Knapp signed an order appointing Cushman & Wakefield receiver pending resettlement.
 
 
 13
 Following that hearing, each party submitted letters to Judge Knapp stating their objections and proposed modifications to the order. On December 22, 1986, Judge Knapp, after considering the post-hearing comments, entered an order which installed Cushman & Wakefield as receiver for 40 Wall Street:
 
 
 14
 "ORDERED, that Nyland and The New York Land Company (a) be enjoined and restrained from collecting the rents of said premises and from interfering in any manner with the Receiver in the discharge of its duties hereunder; and (b) cooperate fully with the Receiver in providing all books, leases, rent rolls, records, accounts, keys, contracts and other documents or materials necessary for the Receiver to discharge its obligations hereunder;
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 ORDERED, that the said Receiver may render management and leasing services and receive reasonable payment for said services...."
 
 
 18
 On February 13, 1987, letters from Joseph Bernstein and Dean P. Stanton of the New York Land Company, signed as "Managing Agent" for Nyland and maintaining that New York Land was still the exclusive leasing agent for 40 Wall Street, came to the attention of Cushman & Wakefield. In response, Cushman & Wakefield moved on February 17 for a Temporary Restraining Order enjoining New York Land from interfering with its receivership duties.
 
 
 19
 At the conclusion of a hearing on February 27, 1987, the district court ruled that "there should be one person running this building throughout and that was in general my impression of what I was doing last December" and entered the injunction which is being appealed. The court ruled from the bench and issued no written findings of fact or law. On April 23, 1987, Judge Knapp signed a written order in accordance with his ruling that appointed Cushman & Wakefield the exclusive leasing and management agent for the premises. The order restrained and enjoined New York Land or anyone else from taking any action in derogation of Cushman & Wakefield's position.
 
 II.
 
 20
 The appellants raise several issues. First, as they have throughout this litigation, they question the appropriateness of the district court's order appointing Cushman & Wakefield the receiver and exclusive agent for 40 Wall Street because a receivership is a drastic remedy, not an automatic right, and because, they maintain, the criteria for a preliminary injunction have not been met. Second, they maintain that even if it was appropriate for the court to appoint Cushman & Wakefield as a receiver of rents and profits, the appointment of a receiver does not abrogate New York Land's exclusive right to manage and lease 40 Wall Street. Third, they contend that the district court failed to satisfy the requirements of Rules 52(a) and 65(d) of the Federal Rules of Civil Procedure because its order provided no reasons or basis for its issuance. Fourth, they contend that the district court's order violated their right not to be deprived of property without due process.
 
 
 21
 Judge Knapp's grant of a preliminary injunction against New York Land should be overturned only if the issuance of the injunction constituted an abuse of discretion under the applicable standard for the issuance of such orders. See Doran v. Salem Inn, Inc., 422 U.S. 922, 931-32, 95 S.Ct. 2561, 2567-68, 45 L.Ed.2d 648 (1975). A party seeking a preliminary injunction must demonstrate that it is likely to suffer possible irreparable harm if the requested relief is not granted and "either (1) a likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor." Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 314-15 (2d Cir.1982).
 
 
 22
 We believe that the district court had ample evidence that New York Land's continuing role in the management of 40 Wall Street would irreparably harm the property. It seems obvious that a property, particularly one that is currently at the focal point of litigation concerning its ownership, should have but one leasing and management agent to speak for it. Both current and prospective tenants could only be negatively influenced in their decisions concerning whether to begin or renew tenancies by there being two agents ostensibly performing the same functions for the property. As the district court found, having two entities speaking for one property is confusing to those in the rental market. Especially as regards the property's marketability to new tenants, this confusion must be seen as likely to harm its marketability, and, consequently, reduce its value. This, we believe created a likelihood of irreparable harm to the premises that warranted the issuance of a preliminary injunction under the Coca-Cola standard.
 
 
 23
 We agree with appellants' contention that the appointment of a receiver is not automatic under the mortgage agreement, that "the appointment of a receiver is considered to be an extraordinary remedy", and that the remedy should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property. Chambers v. Blickle Ford Sales, Inc., 313 F.2d 252, 260 (2d Cir.1963). We believe that Citibank made an adequate showing that allowing New York Land to have a continuing role in managing the building would be harmful to the premises' marketability. This harm to its marketability would also reduce the value of the security represented by Citibank's mortgage.
 
 
 24
 Furthermore, the mortgage agreement between Citibank and Nyland provides that upon the occurrence of any event of default (as explained in the mortgage), Citibank may apply for the appointment of a receiver. Given that it is undisputed that several events of default had occurred, we believe that this provision strongly supports the appointment of a receiver. See New York Real Property Law Sec. 254(10); Meyer v. Indian Hill Farm, Inc., 258 F.2d 287, 293-94 (2d Cir.1958); Febbraro v. Febbraro, 70 A.D.2d 584, 585, 416 N.Y.S.2d 59 (2d Dep't 1979). It is entirely appropriate for a mortgage holder to seek the appointment of a receiver where the mortgage authorizes such appointment, and the mortgagee has repeatedly defaulted on conditions of the mortgage which constitute one or more events of default. See, e.g., Mancuso v. Kambourelis, 72 A.D.2d 636, 637, 421 N.Y.S.2d 130, 131 (3d Dep't 1979); Febbraro v. Febbraro, supra; Home Title Insurance Co. v. Isaac Scherman Holding Corp., 240 A.D. 851, 267 N.Y.S. 84, 85 (2d Dep't 1933).
 
 
 25
 Appellants also contend that the district court's order should be vacated because it vests powers in the receiver over the premises that were greater than Nyland had following the execution of its contract with New York Land. The basis of this argument is that New York Land's management agreement with Nyland vested New York Land with control over the management, leasing, administration and development of the property and that those rights bound Nyland and its successors and assigns. As a result, appellants argue, Nyland no longer possessed those powers during the term of its agreement with New York Land. They further argue that since Nyland no longer possessed these powers, a receiver of Nyland's interest in the property could not acquire them. We disagree with this contention for two reasons. First, we believe that New York Land was acting as Nyland's agent in its management of the property, and any interest in the property held by New York Land must, therefore, be seen as derivative of Nyland's interest. Consequently, New York Land's interests were subject to the appointment of a receiver for the premises to the same extent as Nyland's.
 
 
 26
 Second, we believe that the receiver's fiduciary responsibilities to preserve the property during the course of the underlying litigation concerning the ownership of the property must be seen as superior to New York Land's contractual interest, if any, in the property. As receiver, Cushman & Wakefield is acting as an officer of the court and has the duty to preserve and protect the property pending the outcome of the litigation. See Stokes v. Hoffman House of New York, 46 A.D. 120, 130, 61 N.Y.S. 821, 827 (1st Dep't 1899), aff'd, 167 N.Y. 554, 60 N.E. 667 (1901). As a result, its authority is wholly determined by the order of the appointing court. Id. Furthermore, under New York law, receivers are not bound by contracts of the entity that they are appointed to protect. See Hanna v. Florence Iron Co. of Wisconsin, 222 N.Y. 290, 295, 118 N.E. 629, 630 (1918). A receiver becomes bound only when it affirmatively adopts the obligations of the entity that it is protecting. Given that Cushman & Wakefield has clearly not adopted New York Land's management contract and because we see New York Land's interest in 40 Wall Street as being composed of no more than contractual interests arising from its agreement with Nyland, we find that New York Land's management and leasing services contract is subordinate to Cushman & Wakefield's obligation to preserve the premises.
 
 
 27
 Although it would have been helpful had the district court stated its reasons for its order of April 24, 1987, we decline to find that its order failed to comply with Federal Rules of Civil Procedure 52(a).[2] The record of the February 27 hearing demonstrates that there was sufficient evidence to support the order, and consequently no remand is necessary. See Gibbs v. United States, 599 F.2d 36, 39 (2d Cir.1979); Vance v. American Hawaii Cruises, Inc., 789 F.2d 790, 792 (9th Cir.1986).
 
 
 28
 As required by Rule 65(d),[3] the district court adequately set forth its reasons for granting the preliminary injunction in its Preliminary Injunction Order, Temporary Restraining Order, and Order to Show Cause for a Preliminary Injunction. The court expressly incorporated the affidavits of Henry Lieberman, an official of the receiver, and Maria Patterson, counsel for the receiver, both of which described New York Land's interference with the management and leasing functions of the receiver. We believe this record is sufficient to satisfy the requirements of Rule 65(d).
 
 
 29
 Having found that the district court's order complied with all procedural requirements and was amply supported by the record, we see no merit to appellants' contention that they were denied due process. We find no substance to their other claims.
 
 
 30
 Affirmed.
 
 
 
 *
 Frank A. Kaufman, Senior District Judge, United States District Court for the District of Maryland, sitting by designation
 
 
 [1]
 The Republic of the Philippines was made a defendant in this action because it claims an interest in 40 Wall Street. See Republic of the Philippines v. Marcos, 640 F.Supp. 737 (S.D.N.Y.1986). Apparently, throughout the current proceedings the Philippines has endorsed the appointment of a receiver for 40 Wall Street with full management and leasing authority
 
 
 [2]
 Fed R.Civ.P. 52(a) provides in pertinent part:
 In all actions tried on facts without a jury ... the court shall find the facts specially and state separately its conclusions of law thereon ... and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action ... Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous ... It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court....
 
 
 [3]
 Fed R.Civ.P. 65(d) provides in pertinent part:
 Every order granting an injunction and every restraining order shall set forth the reasons for its issuance....