**T & L REDEMPTION CENTER CORP., Plaintiff,**

v.

**PHOENIX BEVERAGES, INC., Defendant.**

**No. CV 88–2793.**

United States District Court, E.D. New York.

Aug. 1, 1989.

Joseph Giame, Giaimo Vreeburg, Rego Park, N.Y., for plaintiff.

Kelley, Drye & Warren, New York City, for defendant.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

Plaintiff T & L Redemption Center Corporation ("T & L") is a corporation engaged in the business of redeeming empty beverage containers. The "business" of redeeming empty containers exists by virtue of New York State's returnable beverage container law (popularly known as the "bottle bill") (hereinafter the "beverage law"), Title 27 of the Environmental Conservation Law ("ECL"), pursuant to which consumers pay the now familiar five cents per container deposit when purchasing most soft drinks and beer. The beverage law creates a route which the containers, and the nickels securing their return, are to travel.

The route itself is relatively straightforward. Following manufacture by a bottler or brewer, beverages are sold by a prime "distributor,"[1] also known as a "deposit-initiating distributor," who is the first wholesaler in the chain of delivery to charge the five-cent deposit. Prime distributors sell to other distributors, who in turn sell to "dealers,"[2] who in turn sell to consumers, each passing along to the next the five-cent deposit charge. Consumers may then "redeem" their empty containers in exchange for the deposit paid at the time of purchase. ECL § 27-1007. Acceptance of empty containers for redemption is mandatory. Specifically, a "dealer shall accept ... from a redeemer: any empty beverage containers of the design, shape, size, color, composition, and brand sold by the dealer, and shall pay to the redeemer the refund value of each such beverage container ..." *Id.*

Dealers may then in turn redeem the empty containers to a distributor, who "shall accept" them (provided, again, that they are of the same shape, size, color, composition and brand sold by the distributor), and who "shall pay" the dealer the statutory (i.e., five-cent) refund value. ECL § 27-1007. The process of redeeming empty containers in exchange for payment of the five-cent deposit continues until the deposit-initiating distributor has paid out the original nickel-per-container deposit.

Two additional features of this scheme, however, give rise to the present controversy. First, the beverage law created an entity known as a "redemption center," defined to be "any establishment offering to pay the refund value of a beverage container under the provisions of section 27-1013 of this title." ECL § 27-1003. Section 27-1013, by incorporating the mandatory acceptance and refund payment pro-

---

1. "'Distributor' means any person, firm or corporation which bottles, cans, or otherwise fills or packages beverage containers, or which engages in the sale of such containers to a dealer." ECL § 27-1003(6).

"'Dealer' means every person, firm or corporation who engages in the sale of beverages in beverage containers to a consumer for off premises consumption in this state." ECL § 27-1003(4).

2. See note 1, *supra*.

visions of section 27–1007, provides that a distributor must accept empty containers from the "operator of a redemption center" and must pay such operator the statutory (i.e., five cents per container) refund value. T & L, however, by its own admission, has not paid the full five-cent deposit to the distributors and retailers from whom it acquired containers. Instead, T & L often negotiated a lower price for the empty containers, presumably because it provided retailers the service of taking the space-consuming empties off their hands, as well as sorting, removing unacceptable containers, and packaging for shipment to the prime distributors. T & L thus earns profits from the difference, if any, between the negotiated price it may pay the distributors and retailers from whom it acquires containers, and the statutory (five cent) redemption price it obtains when redeeming those distributors with containers.

A second feature of the statutory scheme is also a source of revenue for T & L. When accepting empty bottles from a dealer or redemption center operator, a distributor is required to pay to the dealer or operator, in addition to the nickel per container deposit, a handling fee of 1.5 cents for each beverage container accepted. ECL § 27–1007. T & L identifies this fee as part of its profits.

The gravamen of T & L's complaint is that the defendants, all "prime" distributors, allegedly sought to put T & L out of business and thus conspired to refuse to accept the containers properly tendered by T & L for redemption. T & L claims that it has acquired a large supply of containers, at substantial cost, and that because of defendants' refusal to accept them, T & L has been forced to destroy or dump most of them for lack of storage space, and in fact is virtually out of business.

T & L claims that defendants are in violation of the mandatory acceptance provisions of the bottle bill, as well as the antitrust provisions of the Sherman Act, 15 U.S.C. §§ 1–7, and the Clayton Act, 15 U.S.C. §§ 12–27. T & L seeks damages as well as a permanent injunction compelling the defendants to accept T & L's containers and to enjoin them from continuing their alleged violations of state and federal law. T & L expressly invokes paragraph 4 of ECL section 27–1007, which provides that "a *distributor* shall have a civil right of action to enforce this subdivision, including ... the right to apply for temporary and preliminary injunctive relief against continuing violations ..." (emphasis added).

Presently before the Court is T & L's application for a preliminary injunction pending final determination of the action. In opposing the motion, defendants also argued that the antitrust claim should be dismissed on the merits and that the complaint should therefore be dismissed for lack of jurisdiction.

For the reasons detailed below in Part I, the application for injunctive relief is denied. In addition, for the reasons set forth in Part II, the Court finds that the complaint must be dismissed in its entirety.

## DISCUSSION

### I. *Denial of Preliminary Injunctive Relief*

Upon referral, Magistrate Caden conducted a two-day evidentiary hearing, at the close of which he recommended to this Court that T & L's request for a preliminary injunction be denied. Magistrate Caden stated his findings and reasoning on the record on September 22, 1988, a transcript of which has been provided to this Court. Thereafter, T & L objected to the magistrate's recommendation, and various defendants submitted memoranda in opposition to plaintiff's objections.

In accordance with Fed.R.Civ.P. 72(b), this Court is to "make a *de novo* determination ... of any portion of the magistrate's disposition to which specific written objection has been made ..." The district judge is thereafter free to "accept, reject or modify the recommended disposition." *Id. See also* 28 U.S.C. § 636(b). As one commentator has noted, however, "[t]he '*de novo* determination' called for in the statute [28 U.S.C. § 636(b), from which Rule 72(b) was adopted] and in Rule 72(b) does not mean that the judge must conduct a

new hearing, but simply means that he must give 'fresh consideration to those issues to which specific objections have been made.' " 12 C. Wright & A. Miller, *Federal Practice and Procedure* § 3076.8 at 48 (Supp.1988) (citations omitted).

After carefully reviewing the transcript of the evidentiary hearing and the numerous pre- and post-hearing submissions of the parties, this Court fully endorses the conclusions and reasoning of Magistrate Caden. Accordingly, the Court accepts the magistrate's recommendation to deny injunctive relief for the reasons set forth therein. While it would ordinarily be unnecessary to restate those reasons, in this case a brief discussion is warranted inasmuch as it relates to the dismissal of the complaint.

The standard for injunctive relief in this circuit is well established:

> A party seeking a preliminary injunction must demonstrate that it is likely to suffer possible irreparable harm if the requested relief is not granted and "either (1) a likelihood of success on the merits of its case, or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor."

*Citibank, N.A. v. Nyland (CF8) Ltd.,* 839 F.2d 93, 97 (2d Cir.1988) (citing *Coca–Cola v. Tropicana Products, Inc.,* 690 F.2d 312, 314–315 (2d Cir.1982)). The burden on the moving party is especially heavy where, as here, the party seeks a mandatory injunction changing the status quo. *American Future Systems, Inc., v. State University,* 565 F.Supp. 754 (N.D.N.Y.1983).

■ In the instant action, T & L has failed to meet its burden on each essential issue. First, T & L has not established that it is likely to suffer irreparable harm if the injunction is not issued. Although T & L first began to experience difficulties redeeming its empties as early as August 1986, Magistrate Caden found, and none of the parties has disputed, that "for all practical purposes" T & L is presently, and was at the time the instant application was filed, already out of business. (Tr. 178) Since injunctive relief is intended to prevent future irreparable harm, where, as here, the harm to the moving party has already occurred, such relief is inappropriate. *See e.g., Lovell v. Brennan,* 728 F.2d 560, 562 (1st Cir.1984).

Even if T & L had shown a likelihood of irreparable harm, its federal antitrust claim is so weak on the merits that it could not possibly satisfy either of the remaining requisites for injunctive relief (i.e., a likelihood of success on the merits or a sufficiently serious question going to the merits).[3] As Magistrate Caden found, and as this Court determines *de novo,* there are several fatal problems with T & L's antitrust claim, the most serious of which is the absence of any proof of, or basis for inferring, the existence of conspiracy, agreement or concerted action among the defendants.

■ Even assuming that T & L has established parallel conduct on the part of the defendants in refusing to redeem containers tendered by T & L, such parallel conduct does not itself constitute a federal antitrust violation. *Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.,* 346 U.S. 537, 541, 74 S.Ct. 257, 259, 98 L.Ed. 273 (1954); *Ambook Enterprises v. Time, Inc.,* 612 F.2d 604 (2d Cir.1979), *cert. dismissed,* 448 U.S. 914, 101 S.Ct. 35, 65 L.Ed.2d 1179 (1980). There must also be evidence of some additional element which permits the inference of agreement. *Theatre Enterprises,* 346 U.S. at 541, 74 S.Ct. at 257; P. Areeda, *Antitrust Analysis,* 371–82 (3d ed.1981). One such element is the existence of a credible motive to conspire. *Ambook, supra* at 616.

The inference of agreement, if permitted, may be defeated by proof of legitimate business considerations, *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 286–88, 88 S.Ct. 1575, 1591–92, 20 L.Ed.2d 569 (1968), and must be rejected where either (i) the inference of rational

---

**3.** Since the sole basis for federal jurisdiction in this case is the antitrust claim, it is that claim whose merits must satisfy the test for injunctive relief. In addition, the Court declines to decide the merits of the beverage law claim. *See* Part II, *infra.*

independent choice is more compelling than the inference of agreement, *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Ambook, supra* at 615; or (ii) where the theory necessary to support the inference of agreement simply makes no sense. *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 763, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984).

The above principles, when applied to the evidence adduced at the hearing before Magistrate Caden, preclude any inference of agreement. As brought out at the hearing, each defendant, individually, had a sound business reason for not accepting all the containers tendered by T & L. Specifically, each defendant, obviously interested in detecting the containers it was not legally obligated to redeem ("double-redeemed" and "one-way"[4] empties), therefore had a legitimate business reason for refusing to accept all of T & L's empties when T & L refused to disclose the source of its containers. (Tr.–2 at 90–94, 96–102).

More importantly, assuming each defendant desired to redeem as few bottles as possible (even fewer, perhaps, than it was entitled under the beverage law to refuse), there is no credible economic motive for the defendants to act *concertedly* toward that end. As Magistrate Caden first explained, each defendant's desire to avoid redeeming containers originating with another wholesaler would be best served where one of the other wholesalers does accept them. It is plainly illogical, therefore, to suggest that the defendants have any motive to *conspire* to refuse to redeem T & L's containers. T & L's antitrust claim, accordingly, must fail.

In addition, even if there were some conceivable basis for inferring agreement, any injury to T & L cannot possibly be *antitrust* injury for the simple reason that there is no "market" in which T & L and defendants can be considered competitors. *Brunswick Corp. v. Pueblo Bowl–O–Mat Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Defendants compete with each other in the business of selling beer; unlike T & L, they are not in the "business" of redeeming containers for profit, but in fact lose money on each bottle redeemed. By contrast, T & L, by its own admission, is not in the beer business, but operates solely to redeem empty containers at (it hopes) a profit. (Tr.–2, at 150).

In sum, the Court accepts in its entirety Magistrate Caden's recommendation that T & L's request for injunctive relief be denied. Moreover, as defendants have argued, the fatal deficiencies in T & L's antitrust claim—the absence of a conceivable, credible economic motive to conspire, and the non-existence of any "market" that could give rise to antitrust injury—entitle defendants to judgment as a matter of law on the antitrust claims. Given that a two-day evidentiary hearing has been held, and that the antitrust issues have been extensively briefed by all parties, there is no reason not to enter judgment at this time.

## II. *Dismissal of the Complaint*

Dismissal of the federal antitrust claim poses a serious jurisdictional question, since the sole basis of federal jurisdiction in this case is the presently dismissed antitrust claims. In the seminal case on pendent jurisdiction, *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Supreme Court stated that "if the federal claims are

---

4. "Double redemption" occurs when an empty container which has once travelled the redemption trail to its end (i.e. has been redeemed by the deposit-initiating distributor) reenters the redemption route (usually because it has been fraudulently sold or acquired) and is redeemed for a second time. "One way" sales occurs when the first distributor who sells a filled beverage container does not collect the five cent deposit from the wholesaler, based on an illegal agreement that the wholesaler not seek to redeem any empties with that distributor.

Both of these practices are illegal, *see* Regulations 367.3(d) and 367.5(4), and according to testimony at the hearing, quite common.

dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Strictly applied, *Gibbs* appears to require the dismissal of T & L's remaining claims, which involve solely issues of state law.

Other passages in the *Gibbs* opinion, however, suggest a less summary approach to this kind of jurisdictional dilemma. As the *Gibbs* Court explained, a federal court has *power* to hear a pendent state claim where there exists a federal claim, and where the state claim and the federal claim "derive from a·common nucleus of operative fact." 383 U.S. at 725, 86 S.Ct. at 1138. Assuming there is power, it is then within the federal court's *discretion* to decide whether to exercise its power over the state claim. 383 U.S. at 726, 86 S.Ct. at 1139. Moreover, as one commentator has aptly explained, *Gibbs* "teaches that the question of power to hear a pendent claim ordinarily will be resolved on the pleadings, but the discretionary question whether to exercise that power remains open throughout the litigation." 13B Wright & Miller, *supra, Federal Practice and Procedure: Jurisdiction* 2d § 3576.1 at 142–143.

Among the factors to be considered by a federal court in exercising its discretion are "considerations of judicial economy, convenience, and fairness to litigants." *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. For example, where a federal claim was dismissed for mootness, the Supreme Court held that a court could exercise its discretion in favor of jurisdiction over the remaining pendent state claim, reasoning that,

> [u]nlike insubstantiality, which is apparent at the outset, mootness, frequently a matter beyond the control of the parties, may not occur until after substantial time and energy have been expended ...

*Rosado v. Wyman*, 397 U.S. 397, 404, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970).

At first blush, considerations of judicial economy and convenience to litigants might appear to militate in favor of retaining jurisdiction over T & L's state law claims. After all, the case has proceeded beyond the preliminary stages, and substantial resources have been expended on both the federal and the state claims,·so it arguably might make sense, at this stage, for this Court to retain jurisdiction and decide the state law claims.

■ ·What has become progressively more apparent, through each stage of this litigation, however, is that this case is really and only about New York's returnable beverage container law. The poorly supported antitrust claims are obviously a contrivance to gain admittance to this Court. In such a situation, *Gibbs* plainly requires dismissal of the state claims:

> Pretrial procedures or even the trial itself may reveal a substantial· hegemony of state law claims ... which could not have been anticipated at the pleading stage. Although it will of course be appropriate to take account in this circumstance of the already completed course of the litigation, dismissal of the state claim might even then be merited. For example, it might appear that the plaintiff was well aware of the nature of his proofs and the relative importance of his claims; *recognition of a federal court's·wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case.* Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed.

*Gibbs*, 383 U.S. at 727, 86 S.Ct. at 1139. Since the state law issues are obviously the "real body" of this case, and the federal antitrust claim a mere "appendage" to secure entry to this forum, the only proper exercise of this Court's discretion compels dismissal of the state claim. Notwithstanding the substantial amount of litigating already done before this Court, a claim by a New York redemption center against a group of New York beverage wholesalers concerning rights and obligations created by a recently enacted New York environmental control statute, implicating no federal policy and transactionally related to no federal cause of action, clearly belongs in the courts of the State of New York.

Even if today's result were not required by *Gibbs* and the principles of pendent jurisdiction, this Court would abstain under *Burford v. Sun Oil Corp.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and decline to exercise jurisdiction over the beverage law claim.

In *Burford*, the Supreme Court held that a federal court should have dismissed a claim challenging a Texas state commissioner's denial of a license to drill oil wells because of Texas' elaborate administrative and regulatory system concerning oil and gas fields, and because of the particular interrelatedness of the legal issues and important state policy. 319 U.S. at 332, 63 S.Ct. at 1106. Years later, the Supreme Court described in greater detail the type of situation in which *Burford* authorizes abstention:

> Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar ... In some cases ... the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern ... [In *Burford*], for example ... the reasonableness of the permit ... was not of transcedent importance, but review of reasonableness by the federal courts in that and future cases ... would have had an impermissibly disruptive effect on state policy for the management of those fields.

*Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814–816, 96 S.Ct. 1236, 1244–1246, 47 L.Ed.2d 483 (1976) (Brennan, J.). Moreover, abstention on such grounds results not in a stay but rather in dismissal. *Burford*, 319 U.S. at 315, 63 S.Ct. at 1098.

■ As the discussion in *Colorado River* indicates, the abstention doctrine cannot be invoked merely to avoid deciding questions of state law. Rather, *Burford*-type abstention is proper in a case where (i) there is a *difficult* and *uncertain* question of state law; (ii) the question bears heavily on *important* state policy; and (iii) federal review may impede the state's effort to implement and administer a coherent regulatory or enforcement scheme.

■ The instant action is such a case. The controversial beverage law unquestionably reflects important policies of the State of New York, the enforcement and implementation of which raise the difficult issues involved in this case, as well as others, to which the state has not yet expressly spoken. For example, T & L and the defendants dispute whether T & L fits the statutory definition of redemption center, whether T & L may invoke the provision expressly granting to "distributors" the right to seek injunctive relief, and if not, whether there exists in the beverage law an implied right of action. The courts of New York have not yet addressed, much less decided, any of these issues, nor does the statute's legislative history directly answer them.

Because these and other questions arising out of T & L's state law claim raise serious and sensitive—and as yet unsettled—issues of state policy, which will undoubtedly shape the future interpretation and application of the beverage law, it would be highly inappropriate for this Court to decide them at this time. The wisest course is to dismiss the claim in deference to the state's current efforts to implement a comprehensive regulatory scheme and to fine tune its enforcement policy.

CONCLUSION

T & L's request for a preliminary injunction is denied.

Defendants are entitled to judgment on the antitrust claims; the remainder of the complaint is dismissed for lack of subject matter jurisdiction.

The Clerk is directed to enter judgment accordingly.

SO ORDERED.